No. 80-141

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

FRANCES L. OWEN,

               Plaintiff and Respondent,

    -vs-

F. A. BUTTREY CO., a Mont. Corp.,
and CHARLES REVSON, INC., a
Foreign Corp.,

               Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
           In and for the County of Missoula, The Honorable
           James B. Wheelis, Judge presiding.

Counsel of Record:

    For Appellant:

        Corette, Smith, Pohlman & Allen, Butte, Montana

    For Respondent:

        Tipp, Hoven & Skjelset, P.O. Box 3778, Missoula,
        Montana

---

Submitted on Briefs: March 11, 1981

Decided: **MAY 11 1981**

Filed: **MAY 11 1981**

*Thomas J. Kearney*
—————————————————————
               Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Revson appeals a jury verdict and judgment of the Missoula County District Court, challenging the trial court's discovery procedures.

Frances Owen filed suit in August 1976 alleging that she had suffered severe allergic reaction to the application of certain Revson cosmetics which are distributed in Montana by defendant Buttrey. The jury returned a $2,300 verdict for plaintiff Owen, and judgment was entered accordingly. Defendant Revson maintains on appeal that the trial court committed reversible error in the imposition of sanctions under Rule 37, M.R.Civ.P.

The District Court found that Revson had repeatedly failed to sufficiently comply with Owen's discovery requests. Discovery in this case proceeded primarily through written interrogatories. Among the interrogatories originally submitted to Revson in December 1976 was a request that Revson submit a list of all persons known to the company who claimed to have suffered injury as a result of using the cosmetics in issue. Owen also sought information from Revson regarding any knowledge on the part of the company that the products were indeed defective.

Due to Revson's incalcitrance in responding to plaintiff's interrogatories, the District Court issued a series of orders to compel discovery and impose sanctions. In an April 30, 1979, order the District Court commanded Revson to show cause why a default judgment should not be entered against it for failure to comply with discovery requests. The court further ordered that Revson present witnesses to persuade the court that the records regarding

other allegedly injured claimants did not exist and could not be made available by reconstruction.

On June 15, 1979, the District Court deemed admitted the fact that a substantial number of persons had indeed been injured as a result of using the cosmetic products which had allegedly injured Owen. Revson was specifically precluded from introducing any evidence contrary to the facts now admitted. The order also directed Revson to make a company executive, Dr. Earle Brauer, available in Missoula, Montana, for the purpose of deposition. The company was to bear all expenses of presenting Dr. Brauer in Missoula.

On September 27, 1979, the court issued its opinion and order granting sanction, denying protective order, setting schedule for discovery, and showing cause for hearing. The order provided that the information and records requested in Interrogatory Nos. 40 through 48 were not destroyed and could in some way be reconstructed. The District Court found that Revson had yet to comply with the court's orders compelling discovery; that it caused an earlier trial date to be continued; and that its failure to comply with discovery and orders of the court was willful disobedience.

In light of the foregoing, the court denied Revson's motion for a protective order regarding the Dr. Brauer deposition. Further, the court ruled that Owen's counsel was entitled to reasonable attorney fees. Finally, the court ordered that certain paragraphs of Revson's answer were stricken which, in essence, required the admission that the products involved were defectively designed so that

allergic reactions and injuries would be caused to consumers and that Revson had prior knowledge of the defective nature of the product.

On appeal Revson requests this Court to determine if the District Court abused its discretion under Rule 37, M.R.Civ.P., in issuing these discovery orders and imposing sanctions against the company.

Identical to the corresponding federal rule, Rule 37(d), M.R.Civ.P., provides in applicable part:

> "<u>Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection.</u> If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion <u>may make such orders in regard to the failure as are just</u>, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule . . ." (Emphasis added.)

We preface our ruling in this matter with a general discussion of Rule 37 so that the full and sober lesson of this decision is not lost on the practitioners at whom it is directed.

In recent years, judicial indulgence in abuses of the discovery process has been increasingly replaced by a tougher, less tolerant attitude toward parties who frustrate, rather than facilitate, discovery. Trial courts, exasperated by these abuses, have heralded a new direction in their discovery policies. Federal District Court Judge

Porter, in SCM Societa Commerciale S.P.A. v. Industrial and Commercial Research Corp. (N.D. Tex. 1976), 72 F.R.D. 110, 112, writes:

> "This case makes it abundantly clear that the supposedly self-executing federal discovery rules are being abused. Apparently my prior policy, which included a reluctance to use Rule 37 sanctions, has not worked. Henceforth I will embark on a different course liberally using the full range of Rule 37 sanctions in appropriate circumstances."

Indeed, it has been argued that judicial leniency in applying sanctions is one of the primary shortcomings of the discovery process. See Discovery Sanctions Under the Federal Rules of Civil Procedure: A Goal-Oriented Mission for Rule 37, 29 Case Western Reserve Law Rev. 603, 622 (1979). Hesitancy to impose sanctions has been attributed to a concern for a disposition of cases on their merits and a reluctance to punish parties without absolute assurance that noncompliance is not somehow justifiable. W. Glaser, Pretrial Discovery and the Adversary System, 154-156 (1968).

Crowded dockets have led more and more courts to overcome that reluctance and reemphasize the judicial responsibility to the public. Note, Rule 1, M.R.Civ.P., providing that the Rules of Civil Procedure be interpreted to "secure the just, speedy and inexpensive determination of every action." This Court recognizes that a predisposition toward discovery sanctions, wherein we would resolve doubts about constitutional limitations and the purpose of our procedural rules in favor of restraint, may be increasingly inappropriate given the compelling need to maintain efficient and fair judicial administration.

In adopting a position that dilatory discovery actions are no longer to be dealt with leniently, we are in

accord with the recent trend of cases intent upon punishing transgressors rather than patiently trying to encourage their cooperation.

We are guided by what has become a hallmark of judicial activism in discovery proceedings--the United States Supreme Court decision in National Hockey League v. Metropolitan Hockey Club, Inc. (1976), 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (per curiam). There, respondents, plaintiffs in a multidistrict antitrust action, failed for seventeen months to respond to the satisfaction of the other parties or the court to hundreds of interrogatories. In Re Professional Hockey Antitrust Litigation (E.D. Pa. 1974), 63 F.R.D. 641. In the face of stern admonishment by the trial court, further delays occurred; yet, the trial court refrained from imposing sanctions since all parties were attempting to reach a settlement. Moreover, respondents, at whom the discovery was directed, changed counsel and claimed that the transition hindered their ability to comply.

Finally, a frustrated trial judge dismissed their action finding "flagrant bad faith" and "callous disregard" of their responsibilities. The Court of Appeals reversed the trial court's dismissal, concluding that in view of extenuating circumstances, there was insufficient basis for the trial court's action. In Re Professional Hockey Antitrust Litigation (3rd Cir. 1976), 531 F.2d 1188.

The United States Supreme Court reversed the Circuit Court of Appeals, ruling that the imposition of sanctions was a discretionary decision of the trial judge which must be left undisturbed in the absence of a flagrant abuse of

discretion. The Court criticized the traditional leniency of the judiciary as improperly founded on the principle that parties will, if given one more chance, comply with requests long ignored. In a major change of direction, the Court insisted that unconditional impositions of these sanctions are crucial in deterring "other parties to other lawsuits" from willfully flouting the "discovery orders of other district courts." 427 U.S. at 643. Except for emphasizing the deterrence function of Rule 37, the Supreme Court did not delete the requirement of willfulness, nor did it materially lower the willfulness standard. See Societe Internationale v. Rogers (1958), 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255.

National Hockey League constitutes a pivotal case in the development of Rule 37 as a punitive and deterrent mechanism. It signifies a subordination of leniency in favor of the theory that noncompliance can be deterred by the unhesitant use of harsh sanctions. The decision establishes that deterrence is not only permissible but perhaps mandatory as an objective of Rule 37. Deterrence is no longer envisioned as a merely incidental effect of remedial sanctions but as an affirmative instrument in the judicial arsenal to be used in providing the "just, speedy and inexpensive determination of every action." Rule 1, Fed.R.Civ.P., and also Rule 1, M.R.Civ.P.

In spite of what is, in our view, the dispositive teaching of National Hockey League, that the imposition of sanctions for dilatory abuse of discovery is to be regarded with favor, the willfulness standard has been problematic for some courts. Some trial judges continue to be reluctant

to impose sanctions. No readily discernible standards for willfulness have emerged except in courts of the Ninth Circuit. The trial courts in this circuit are ready and willing to pursue the new direction of National Hockey League. Indeed, even negligent failure to comply has met with punitive sanction. Marquis v. Chrysler Corp. (9th Cir. 1978), 577 F.2d 624.

The Ninth Circuit has gone to such a length as to find that even subsequent compliance with a compelling order will not serve to cure a breach of that order. In G-K Properties v. Redevelopment Agency of the City of San Jose (9th Cir. 1978), 577 F.2d 645, Judge Kennedy writes:

> "Here the Court dismissed the plaintiffs' action with prejudice. It acted properly in so doing. We encourage such orders. Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism. Here the appellants' last-minute tender of relevant documents could not cure the problem they had previously created." 577 F.2d at 647. (Emphasis added.)

The courts of the Ninth Circuit have set a tenor that signals the unacceptability of discovery abuses. This Court adopts a similar position. When litigants use willful delay, evasive response, and disregard of court direction as part and parcel of their trial strategy, they must suffer the consequences.

The case before us exemplifies the principles we have discussed. Owen sought a $25,000 judgment. The jury awarded her $2,300. This was a relatively straightforward action seeking a reasonable compensation. Yet, largely

because of Revson's continual frustration of the discovery process, Owen's cause involved three years of protracted pretrial litigation. The record before us casts only aspersions on Revson's "purity of heart."

We are persuaded, based upon Revson's obvious reluctance to facilitate discovery and its failure to come forward and justify its dilatory actions, that not only were the orders of the District Court wholly within its discretionary powers, but that more severe sanctions may have been called for. In any event, when it is not possible for this Court to make a ready, confident, and accurate determination of a party's good faith in the discovery process, we presume the correctness of the District Court's action under Rule 37. National Hockey League, supra. See also Lumby v. Doetch (1979), ___ Mont. ___, 600 P.2d 200, 202, 36 St.Rep. 1684, 1687.

Finally, we note that the sanctions imposed were not the most severe sanctions at the court's disposal under Rule 37, and that most of the sanctions imposed were of a kind which would aid in the discovery process. The District Court acted well within the confines of its discretion.

We affirm the judgment of the District Court and remand the cause for a determination and award to respondent of attorney fees and costs on appeal in accordance with this opinion.

John Conway Harrison

We concur:

_____
Chief Justice

_____

_____

_____
Justices