No. 99-021

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 149

300 Mont. 76

3 P. 3d 617

---

MICHAEL DAMBROWSKI,

Plaintiff and Appellant,

v.

CHAMPION INTERNATIONAL CORP. and COMPENSATION

ADJUSTERS, INC. and CAROL POSTERINO, individually and

d/b/a COMPENSATION ADJUSTERS, INC.,

Defendants and Respondents.

------------------------------------------------------------------

REX PALMER,

Real Party in Interest and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Rex Palmer, Attorney at Law, Missoula, Montana

For Respondents:

Keith Strong, John A. Kützman; Dorsey & Whitney, Great Falls,

Montana (for Champion International)

Donald C. Robinson, Steven M. Hamilton; Poore, Roth & Robinson,

Butte, Montana (for Compensation Adjusters, Inc., and Carol Posterino)

_____

Submitted on Briefs: July 29, 1999

Decided: June 6, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Rex Palmer appeals the orders of the District Court.

¶2 We affirm.

¶3 We restate the issues as follows:

¶4 1. Whether the District Court abused its discretion in imposing discovery sanctions.

¶5 2. Whether the District Court erred in denying Palmer's motion to disqualify the Honorable Judge Larson.

Standard of Review

¶6 We review a district court's grant of sanctions pursuant to Rule 37, M.R.Civ.P., for abuse of discretion. *See* Eisenmenger v. Ethicon, Inc. (1994), 264 Mont. 393, 402, 871 P.2d 1313, 1319.

Factual and Procedural Background

¶7 We note the pertinent facts in what is an extraordinarily lengthy record. While employed with Champion International Co. (Champion), Michael Dambrowski (Dambrowski) filed claims for employment-related injuries. At the time of those claims, Champion was self-insured for purposes of workers' compensation and employed Compensation Adjusters, Inc. (Compensation Adjusters) to handle the adjustment of workers' compensation claims for Champion's employees. In September, 1994 Dambrowski filed a complaint against the Respondents in the present case "for intentional torts, statutory violations and violation of the covenant of good faith and fair dealing in the adjusting and settling of his Montana Workman's Compensation claim." Dambrowski's claims arose out of his employment with Champion. In May, 1996 Compensation Adjusters and Carol Posterino (Posterino) listed Dambrowski's attorney, Rex Palmer (Palmer), as a trial witness. Compensation Adjusters later contended that it had a compelling need to obtain Palmer's opinion work product regarding his handling of Dambrowski's case. In June, 1996 Palmer filed a motion to bar Respondents from calling him as a witness. In August, 1996 Compensation Adjusters and Posterino moved to compel Palmer to submit to a discovery deposition. Palmer opposed that motion at a hearing.

¶8 In January, 1997 the District Court denied Dambrowski's motion *in limine* to prevent Respondents from calling Palmer as a witness and granted Respondents' motion to depose Palmer, concluding that their motion would "not work substantial prejudice to any party and additional discovery was clearly contemplated under the Pre-Trial Order." At a scheduling conference held later in January, 1997, the District Court requested that the deposition be done before the end of April.

¶9 In April, 1997 Compensation Adjusters' counsel and Palmer agreed on May 28, 1997 as

the date for his deposition. Thereafter, Compensation Adjusters and Posterino filed a notice of Palmer's deposition. On May 13, 1997 Compensation Adjusters faxed Palmer a proposed subpoena duces tecum. On May 27, 1997 Palmer filed a motion to quash subpoena and motion for protective order and canceled his deposition. Following a hearing, the District Court denied Dambrowski's motion for a protective order, ordered that Palmer's deposition be taken within ten days, and directed Palmer to log the items in his file that he claimed were privileged.

¶10 Palmer's deposition was reset for June 4, 1997. At his deposition, Palmer stated that unless Respondents agreed to a stipulation that he had prepared, he would not answer questions about his file for Dambrowski or his representation of him. Respondents rejected Palmer's proposed stipulation and the deposition was concluded. That same day, the District Court held a hearing on Palmer's deposition. Thereafter, Compensation Adjusters and Posterino moved to disqualify Palmer as counsel. Champion moved for the imposition of sanctions against Palmer pursuant to Rules 11 and 37, M.R.Civ.P., and for dismissal of the case with prejudice. On June 16, 1997 the District Court stayed all existing discovery obligations and deadlines until further order of the District Court. On June 23, 1997 Palmer responded to Champion's motion for sanctions but did not request a hearing on sanctions. The parties jointly moved the District Court to vacate all deadlines, including the trial date, and the District Court granted their motion on July 28, 1997. In October, 1997, Palmer filed a "Local Rule 3F Reminder to Court" but again did not request a hearing on Champion's motion for sanctions.

¶11 In an Opinion and Order entered in April, 1998, the District Court denied Compensation Adjusters and Posterino's motion, which Champion joined, to disqualify Palmer from representing Dambrowski but also directed Palmer's associate to "act as lead counsel in this matter in both the pre-trial and trial phases, until the litigation has concluded." Turning to Dambrowski's motions to quash subpoena and for a protective order regarding the deposition of Rex Palmer, the District Court concluded that it had previously determined those issues in its January, 1997 Order and that Palmer "must pay as sanctions the cost of Champion's and Compensation Adjust[e]rs' response to the Motion . . . ." The District Court further ordered that Palmer would "appear and cooperate at a deposition to be scheduled by Defendants at their convenience. Prior to the deposition, Palmer must submit a new document log to the Court with specific reasons for the withholding of any documents."

¶12 Further, the District Court denied Champion's motion to dismiss the action but found

that "Palmer's behavior and lack of respect toward opposing counsel, and this Court is reprehensible. . . . Palmer personally, not Dambrowski, must pay all costs of Champion's and Compensation Adjust[e]r's preparation for and participation in the two scheduled depositions as well as the hearings that resulted from Palmer's failure to cooperate. Additionally, Palmer must pay the cost of preparation of all briefs filed as a result of his failure to comply with the Court's orders beginning January 6, 1997." Champion submitted a sealed statement of fees; Compensation Adjusters and Posterino submitted statements of fees and costs. Palmer filed objections to Respondents' fees and costs and requested "a hearing regarding the reasonableness and factual accuracy of [Respondents'] fees and cost statement." The District Court set a hearing for July 15, 1998. Compensation Adjusters and Posterino filed a notice of deposition for Palmer, scheduling his deposition for June 26, 1998.

¶13 On June 16, 1998 Dambrowski petitioned this Court for a writ of supervisory control. Three days later, Dambrowski moved the District Court for a stay of proceedings; the District Court denied Dambrowski's motion. On June 22, 1998 Dambrowski filed a motion to amend and a request for stay with this Court. On June 26, 1998 Palmer attended his deposition and produced his file together with an objection log. At his deposition Palmer answered under objection Respondents' questions about his handling of Dambrowski's case. Thereafter, this Court granted Dambrowski's motion for a stay of proceedings. In response, the District Court vacated the July, 1998 hearing on Defendants' costs and fees. In August, 1998 we denied Dambrowski's petition for supervisory control without prejudice, concluding that "whether Palmer's deposition should have been ordered and taken is moot" as his deposition had been taken.

¶14 In September, 1998 the District Court held a scheduling conference and granted Palmer's request to resume the role of lead counsel. Palmer advised the District Court that he questioned whether sanctions should be imposed, and the District Court granted Palmer until October 1, 1998 to file a request for hearing. On October 1, 1998 Palmer filed a "Request for Hearing on Whether Sanctions Should Be Awarded." On October 13, 1998 Palmer moved for the disqualification of the Honorable John W. Larson "as regards the sanctions issues." In his disqualification affidavit, Palmer stated that "[i]f the matter in dispute were to continue before the judge who had ruled without a hearing, any ruling consistent with the original ruling would be tainted with the implication that the matter had been pre-judged."

¶15 In November, 1998 the District Court held a hearing on sanctions. The District Court

determined that Palmer's affidavit, which accompanied his motion to disqualify the Honorable John Larson, was "insufficient on its face and not in accordance with the statute." The District Court ruled further that it had previously determined that sanctions were appropriate and that "it's just an issue of how much." However, the District Court allowed Palmer to argue why sanctions were inappropriate. The District Court granted Respondents' motions for sanctions and directed them to prepare orders awarding them fees and costs.

¶16 In December, 1998 the District Court entered its Order regarding sanctions. The District Court denied Dambrowski's motion to disqualify. Further, "[p]ursuant to the mandates of Rules 37(b) and (d)," the District Court ordered that Palmer reimburse Champion $16,704.12 and that Palmer reimburse Compensation Adjusters and Posterino $8,873.98. In December, 1998 Palmer filed a notice of appeal from the District Court's orders.

Discussion

¶17 1. Whether the District Court abused its discretion in imposing discovery sanctions.

¶18 Palmer argues that the District Court erred in compelling disclosure of his work product. In our order denying Palmer's petition for writ of supervisory control, we concluded that this issue is moot as Palmer attended his June, 1998 deposition and answered questions. We therefore decline to revisit this issue.

*A. Whether Palmer's rights to due process were violated.*

¶19 Palmer argues that the District Court's imposition of sanctions violated his rights to due process. Palmer contends that he was entitled to but did not receive notice and an opportunity to be heard before the imposition of Rule 11, M.R.Civ.P., sanctions. Respondents respond that Palmer had notice of sanctions because of their motions and briefs seeking sanctions. Respondents argue further that Palmer had ample opportunity to brief the propriety and amount of sanctions and that he had repeated opportunities to request an additional hearing but declined to do so.

¶20 We conclude that Palmer's due process argument regarding the District Court's April, 1998 order of sanctions is without support in the record. First, Palmer is mistaken in contending that the April, 1998 order deprived him of property without due process. In its

April, 1998 Order, the District Court ordered that Palmer reimburse Respondents for the costs they incurred as a result of his discovery abuses. However, the District Court did not assess sanctions but rather directed the Respondents to file their costs and fees. Palmer was not deprived of property until the District Court assessed specific costs and fees in its December, 1998 order. Nor has Palmer shown that the alleged lack of notice and opportunity to be heard before the April, 1998 Order prejudiced his rights in any way.

¶21 Second, Palmer's argument that he is entitled to due process under decisions that have construed Rule 11, M.R.Civ.P., sanctions is misplaced. The District Court's April, 1998 Order made no mention of Rule 11. Further, although the District Court may have relied on Rule 11 in sanctioning Palmer for Dambrowski's Motions to Quash Subpoena and for Protective order, the District Court did not address either Rule 11 or Dambrowski's Motions to Quash Subpoena and for Protective Order in its final, December 1998 Order imposing sanctions. In his Reply brief, Palmer concedes that the District Court's final order "does not rely upon or refer to Rule 11." We conclude that Palmer's reliance on Rule 11 is without merit.

¶22 Further, the record demonstrates that Palmer had notice of sanctions, that he responded to Respondents' motions for sanctions, and that he repeatedly elected not to request a hearing on sanctions before April, 1998. When Champion moved for the imposition of sanctions under Rules 11 and 37, M.R.Civ.P., in June, 1997, Palmer responded to Champion's motion but did not request a hearing. Rather, Palmer requested that "the Court reserve ruling until the transcript [of his deposition] is available for review." When Palmer filed a "Supplementary Memorandum Re: Status of Recent Motions" in June, 1997 he again did not request a hearing. Palmer asserted rather that "[u]pon filing of the transcript of Mr. Palmer's deposition, Champion's motion [for sanctions] should be ripe for ruling." When Palmer filed a "Local Rule 3F Reminder To Court" in October, 1997, he again did not request a hearing on Champion's motion. On this record Palmer cannot plausibly maintain that he was denied notice and an opportunity to be heard before the District Court's April, 1998 order.

¶23 We turn to the District Court's December, 1998 order, which imposed sanctions under Rule 37, M.R.Civ.P. The plain language of Rule 37, M.R.Civ.P., does not require notice and a hearing before the imposition of sanctions. Further, we have previously concluded that no court order is required before the imposition of sanctions pursuant to Rule 37(d), M.R.Civ.P. *See* Jerome v. Pardis (1989), 240 Mont. 187, 191, 783 P.2d 919, 921 (concluding "under subsection (d) [of Rule 37] no [court] order is necessary, however,

sanctions are only authorized for the three enumerated failures").

¶24 However, Palmer appears to argue and Respondents do not dispute that Palmer was entitled to notice and an opportunity to be heard before he was sanctioned under Rule 37 (b), M.R.Civ.P., sanctions. We agree. When a person is sanctioned with attorney's fees and costs pursuant to Rule 37(b), that person is entitled to notice and the opportunity to be heard before the imposition of sanctions. *Compare* Lindey's, Inc. v. Goodover (1994), 264 Mont. 489, 497, 872 P.2d 767, 772 (concluding appellant was entitled to a "notice to show cause and . . . a hearing" before the imposition of Rule 11 sanctions).

¶25 In the present case, however, we conclude that Palmer received adequate notice and opportunity to be heard before the imposition of sanctions at the December, 1998 hearing. As previously discussed, Palmer received extensive notice and opportunities to be heard before the District Court's April, 1998 order of sanctions. Following the District Court's April, 1998 Order, when Palmer objected to Respondents' costs and fees, he requested "additional discovery and hearing regarding the reasonableness and factual accuracy of [Respondents'] fees and cost statement[s]." Only in September, 1998 did Palmer question the appropriateness of sanctions, as opposed to their "reasonableness and factual accuracy." In October, 1998 Palmer at last filed his "Request for Hearing on Whether Sanctions Should be Awarded." Thus, Palmer waited more than *thirteen* months after Respondents moved for sanctions to question whether they should be imposed.[1]

¶26 In November, 1998 the District Court held a hearing on sanctions and allowed Palmer to argue regarding the appropriateness of sanctions:

> Mr. Palmer: Would that be appropriate to stop now or should I go into the other matters that would concern whether some of the sanctions are appropriate in the first place?

> The Court: You can briefly illuminate them, I'm not trying to cut you off.

> Mr. Palmer: Okay. I just didn't want to offend the Court, because I thought we were limiting this hearing.

> The Court: Okay, we're all here. This is your opportunity to make a statement, to make your argument on the issues that you think are presented?

Mr. Palmer: Okay.

Palmer argued whether sanctions were warranted and concluded, "[t]hat, again, is the testimony that I would offer, and I offer that under oath at this time. If the Court would like me to be sworn, I'll swear to those matters. In fact, I elect to do that, I think." Palmer then attested under oath to the truth of his testimony.

¶27 This record clearly establishes that Palmer had an opportunity to be heard before the District Court *imposed* sanctions in December, 1998. We conclude that he received adequate notice and opportunity to be heard before the District Court assessed fees and costs for Respondents.

¶28 Palmer argues further, however, that Rule 37, M.R.Civ.P., has no application to him, in essence because he is a nonparty deponent. Palmer asserts that the District Court therefore erred in sanctioning him pursuant to that Rule. Champion responds and Palmer does not dispute that Palmer did not preserve this issue for review.

¶29 The rule is well established that we do not consider issues raised for the first time on appeal. *See* Unified Industries, Inc. v. Easley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15. We therefore decline to address whether an attorney who defies a district court's order to appear for a deposition may be sanctioned under Rule 37, M.R.Civ. P.

¶30 However, for the benefit of lower courts and the bar, we draw attention to the plain terms of Rule 16(f), M.R.Civ.P., which provides in pertinent part:

> **Sanctions**. If a party *or party's attorney fails to obey a scheduling or pretrial order* . . . or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Rule 16(f), M.R.Civ.P., clearly has application in cases like the present one where an

attorney defies a district court's scheduling and pretrial orders.

*B. Whether the amount of sanctions awarded was excessive.*

¶31 Palmer argues that the costs and fees awarded Respondents are excessive. Palmer argues that the fees awarded exceeded reasonable fees in the locality and that Rule 1.5, M.R.Prof.Conduct, lists the fees customarily charged in a locality as a factor to be considered in determining the reasonableness of fees. Palmer argues that he gave the only testimony on the reasonableness of fees and that he testified that fees for civil actions typically ranged from $125 to $140 per hour in Missoula. Palmer asserts that Compensation Adjusters' counsel billed at $130 per hour and that Champion's attorney billed at $275 per hour. Further, Palmer argues that the sanctions are not supported by the record. Palmer contends that he did not file motions that were wholly repetitive of previous motions on which the District Court ruled. We decline to review this latter argument as it is premised on Palmer's misplaced contention that the District Court assessed fees and costs, in part, under Rule 11, M.R.Civ.P. Palmer also argues that he did not refuse to answer *any* questions at the June, 1997 deposition.

¶32 Respondents respond that Palmer only offered his own testimony as to the reasonableness of fees and that their proof of costs and fees was uncontested. Further, Champion asserts and Palmer does not dispute that Palmer did not offer specific objections either to the necessity of or the time spent on the work billed by Respondents' counsel.

¶33 We conclude that Palmer's objections to the amount of the fees and costs that the District Court imposed as sanctions are unpersuasive. Rule 1.5 does not state that the fee customarily charged in a locale is the *sole* factor to be considered. Rather, Rule 1.5 lists a host of factors that may be considered, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> . . .
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services.

Rule 1.5, M.R.Prof.Conduct. Palmer asserts that to the extent the District Court's award of fees included fees for Rule 11 misconduct, they should be stricken. However, Palmer has identified nothing in the record that supports his claim. On this record, we conclude that Palmer has made no showing that the amount of the fees and costs awarded Respondents is excessive.

*C. The relationship between Palmer's discovery misconduct and the discovery sanctions imposed.*

¶34 This Court has long taken a dim view of discovery abuses. In Owen v. F.A. Buttrey (1981), 192 Mont. 274, 627 P.2d 1233, the Court adopted "a position that dilatory actions are no longer to be dealt with leniently," following the U.S. Supreme Court's decision in National Hockey League v. Metropolitan Hockey Club, Inc. (1976), 427 U.S. 639, 96 S. Ct. 2778, 49 L.Ed.2d 747. *Owen*, 192 Mont. at 278, 627 P.2d at 1235. Further, "when it is not possible for this Court to make a ready, confident, and accurate determination of a party's good faith in the discovery process, we presume the correctness of the District Court's action under Rule 37." *Owen*, 192 Mont. at 280-81, 627 P.2d at 1237 (citation omitted).

¶35 In Smith v. Butte-Silver Bow County (1996), 276 Mont. 329, 916 P.2d 91, we recognized "the salutary purposes underlying the availability of Rule 37, M.R.Civ.P., sanctions for discovery abuses . . . ." *Smith*, 276 Mont. at 332, 916 P.2d at 92. We noted concerns regarding crowded dockets and concluded that "Rule 37, M.R.Civ.P., provides trial courts with a means to prevent an excessive back-log of cases." *Smith*, 276 Mont. at 332, 916 P.2d at 93 (citation omitted). Further, we determined that "[t]he trial judge is in the best position to know . . . which parties callously disregard the rights of their opponents and other litigants seeking their day in court . . . . As a result, we generally defer to the decision of the trial court regarding Rule 37, M.R.Civ.P., sanctions." *Smith*, 276 Mont. at 332, 916 P.2d at 93 (citation omitted). We further concluded that "[t]he extent of the 'consequences' imposed by a district court . . . should relate to the extent and nature of the actual discovery abuse and the extent of the prejudice to the opposing party which results therefrom." *Smith*, 276 Mont. at 339-40, 916 P.2d at 97.

¶36 In light of *Smith's* requirement of a "relationship" between sanctions and "the extent and nature of the actual discovery abuse and the extent of the prejudice," we review the actual discovery abuse in the present case. *Smith*, 276 Mont. at 339-40, 916 P.2d at 97. The District Court found that Palmer violated its orders concerning the depositions scheduled for May and June, 1997. We consider the circumstances of each one of these scheduled depositions in turn.

¶37 Palmer does not dispute that he was directed to appear at the deposition scheduled for May, 1997. However, Palmer appears to argue that the effect of his objections to the subpoena under Rules 30(d) and 45(b)(1) was to suspend the deposition and disclosure of documents until further order of the District Court.

38 ¶Palmer is mistaken. Rule 30(d) provides in pertinent part:

> **Motion to terminate or limit examination**. *At any time during the taking of the deposition*, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court . . . may order the officer conducting the examination to cease forthwith from taking the deposition.

Rule 30(d), M.R.Civ.P. (emphasis added).

¶39 Palmer ignores that Rule 30(d) only contemplates a motion to terminate or limit a deposition "[a]t any time during the taking of the deposition." Rule 30(d), M.R.Civ.P. Palmer filed his objections and motions before the deposition and therefore outside the reach of Rule 30(d). *Compare* Pioche Mines Consolidated, Inc. v. Dolman, et al (9th Cir. 1964), 333 F.2d 257, 269 (concluding "unless [a party] has obtained a court order that postpones or dispenses with his duty to appear [at a deposition], that duty remains. . . . Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear." We agree with the court in *Pioche*.

¶40 Moreover, Rule 45(b)(1), is similarly unavailing for Palmer. Rule 45(b)(1) provides in pertinent part:

> **For production of documentary evidence**. A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein; but the court, upon motion made promptly and in any

event at or before the time specified in the subpoena for compliance therewith, *may* (1) quash or modify the subpoena if it is unreasonable and oppressive . . . .

Rule 45(b)(1), M.R.Civ.P. (emphasis added).

¶41 Without authority, Palmer appears to assume that his filing of a motion to quash the subpoena served to quash the subpoena. Palmer is mistaken. Rule 45(b)(1), M.R.Civ.P., provides rather that upon filing of a timely motion, a district court "may . . . quash or modify the subpoena." As the District Court did not quash the subpoena, Palmer was not free to simply disregard its command.

¶42 We conclude that when Palmer unilaterally canceled the May, 1997 deposition, he violated the District Court's deposition order.

¶43 Regarding his deposition in June, 1997, Palmer appears to argue that he was only directed to "appear" at his deposition, that he was not directed to answer questions, and that he therefore did not violate the District Court's order. This argument is unpersuasive. When asked whether he would not "testify about any of [his] actions with respect to the representation of Mr. Dambrowski and in the underlying workers' compensation case in any regard unless [the Defendants] sign the proposed stipulation[,]" Palmer responded, "[t]hat's right. But I'm here to answer other questions." Palmer's contention that he was willing to answer "other" questions is both irrelevant and disingenuous: the record establishes that he refused to answer any of the questions for which Respondents had sought his deposition. Further, Palmer's suggestion that Respondents "terminated" the deposition, thereby depriving him of an opportunity to object to individual questions, is also disingenuous. The record shows that Respondents proposed and Palmer agreed that they "recess the deposition" and present their dispute to the District Court. Palmer has flatly misstated the record.

¶44 As previously discussed, Palmer could have moved to terminate or limit his examination under Rule 30(d), M.R.Civ.P. Palmer also could have answered questions under objection, as he eventually did at his June, 1998 deposition. However, Palmer eschewed both courses of action and refused to answer *any* questions concerning his representation of Dambrowski unless Respondents agreed to his stipulation. We conclude that Palmer clearly defied the orders of the District Court concerning his scheduled June, 1997 deposition.

¶45 Further, the record establishes that Respondents were prejudiced by Palmer's defiance of the District Court's orders. Both Champion and Compensation Adjusters and Posterino's counsel spent substantial time preparing for the depositions scheduled in May and June, 1997 and for their related motions and briefs. Nor has Palmer disputed the details of Respondents' itemized statements of fees and costs. We conclude that he has failed to rebut the prejudice that the Respondents have shown. *Compare Smith*, 276 Mont. at 340, 916 P.2d at 97 (considering prejudice to parties in reviewing a district court's order of sanctions).

¶46 Although the District Court could, for example, have dismissed the underlying action in the present case or made other orders under Rule 37(b)(2)(B), (C), and (D), M.R.Civ.P., the District Court ordered Palmer to reimburse Respondents for the costs and fees that they incurred as a result of his defiance of the District Court's orders. Further, we note that Palmer has not shown that his "failure to comply with [the District Court's orders] was 'substantially justified,' or that other circumstances make such an award unjust." Delaware v. K-Decorators, Inc., 1999 MT 13, ¶ 89, 293 Mont. 97, ¶ 89, 973 P.2d 818, ¶ 89. We conclude that the consequences imposed by the District Court, though severe, related appropriately "to the extent and nature of the actual discovery abuse and the extent of the prejudice to the opposing [parties] which result[ed] therefrom." *Smith*, 276 Mont. at 340, 916 P.2d at 97.

¶47 We hold that the District Court did not abuse its discretion in imposing discovery sanctions on Palmer.

¶48 2. Whether the District Court erred in denying Palmer's motion to disqualify the Honorable Judge Larson.

¶49 Palmer argues that when he filed his October, 1998 motion to disqualify Judge Larson, the District Court was divested of jurisdiction to make orders regarding the imposition of sanctions under § 3-1-805, MCA. Palmer argues that because the District Court imposed sanctions in April, 1998 without a "required hearing," the District Court "prejudged" the matter. In his affidavit, Palmer stated that "[p]rejudice has been defined as a 'forejudgment' or 'preconceived opinion' " but added that he "respects Judge Larson as an individual and as a judge and considers him a man of integrity." Without citation to any legal authority, Palmer argues that "prejudgment" is tantamount to prejudice.

¶50 We reject Palmer's argument. As previously discussed, Palmer received notice and an

opportunity to be heard before the District Court assessed fees and costs. Thus, the factual premise for Palmer's argument is erroneous. Moreover, Palmer has pointed to nothing in the District Court's orders that suggests "prejudgment" or prejudice.

¶51 In light of Palmer's failure in his affidavit to allege bias or prejudice, as required under § 3-1-805, MCA, we conclude that the District Court correctly determined that "[Palmer's] motion to disqualify is complete[ly] inappropriate and without merit." We hold that the District Court did not err in denying Palmer's motion to disqualify Judge Larson.

¶52 The orders of the District Court are affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

1. Palmer argues that the issue of a hearing arose in the Application for writ of supervisory control (hereafter, Application) that he filed with this Court. Even accepting the dubious premise that the Application was substantively the equivalent of a request for hearing in district court, we note that he filed his Application in June, 1998, *one year* after Respondents moved for sanctions.