FILED

06/17/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0138

DA 24-0138

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 126

THE ESTATE OF WILLIAM HARRIS III,

        Counter-Plaintiff, Appellant, and
        Cross-Appellee,

    v.

MICHAEL REILLY,

        Counter-Defendant, Appellee, and
        Cross-Appellant.

APPEAL FROM:   District Court of the Second Judicial District,
                In and For the County of Butte-Silver Bow, Cause No. DV-22-100
                Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Adam Cook, Everett Cook Law, Anaconda, Montana

        For Appellee:

                Lawrence E. Henke, Attorney at Law, Butte, Montana

                      Submitted on Briefs:  March 26, 2025

                              Decided:  June 17, 2025

Filed:

                   _____
                             Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 The Estate of William G. Harris III ("the Estate") appeals from the Second Judicial District Court, Butte-Silver Bow County's September 8, 2023 Order Dismissing Complaint and February 9, 2024 Order Denying Treble Damages and Attorney Fees and Granting Costs ("Damages Order"). Michael Reilly cross-appeals the jury's October 4, 2023 Special Verdict awarding the Estate $28,900 in compensatory damages and $45,000 in punitive damages. We restate the issues on appeal as follows:

> *Issue 1: Whether the District Court abused its discretion by dismissing Reilly's complaint without imposing sanctions.*
>
> *Issue 2: Whether the District Court abused its discretion by denying the Estate's request for treble damages.*
>
> *Issue 3: Whether there was sufficient evidence to support the jury's damage awards.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On June 7, 2021, Reilly approached William G. Harris III about purchasing his home. Harris, who was developmentally disabled to the point of being unable to read or understand the value of money, signed a contract to sell the home to Reilly for $30,000, which was $84,000 less than its appraised value. While preparing to finalize the sale, Reilly's closing agency notified him that it would need a signed release of information from Harris to verify that there were no pending liens on the property. Reilly went to the Butte Sheltered Workshop ("Sheltered Workshop")—a vocational rehabilitation center for the developmentally disabled—to find Harris. The Sheltered Workshop staff informed Reilly of Harris's disability, explained that the Sheltered Workshop was Harris's payee,

and refused to allow Reilly to speak with Harris regarding the contract. Reilly left the Sheltered Workshop without speaking to Harris. Reilly returned to the Sheltered Workshop at least once more in search of Harris but was once again turned away by the Sheltered Workshop staff.

¶3 Harris died on December 19, 2021. On April 20, 2022, Reilly sued Harris's Estate for specific performance of the contract to purchase Harris's home. On June 10, 2022, the Estate filed an amended answer and counterclaim alleging negligence, negligence per se, Montana Consumer Protection Act ("CPA") violations, and punitive damages. On June 5, 2023, the District Court set a jury trial for September 11, 2023, on both Reilly's and the Estate's claims.

¶4 On the afternoon of September 8, 2023, the Friday before trial was scheduled to begin, and almost a year-and-a-half after filing his complaint, Reilly moved to voluntarily dismiss his complaint. In his motion, Reilly represented to the District Court that the Estate did not object to his motion. The District Court granted the motion the same day and dismissed Reilly's complaint with no effect on the counterclaims. That evening, the Estate filed an objection to the dismissal, noting that it had received Reilly's motion at 4:00 p.m. that day. The Estate's objection requested that the District Court require Reilly to pay the Estate's attorney fees and costs for defending the complaint as a sanction pursuant to M. R. Civ. P. 41(a)(2) based on Reilly's decision to dismiss his complaint "on the eve of trial, after extensive discovery and [after the Estate had] incur[ed] substantial costs." The District Court did not rule on the Estate's objection.

3

¶5 Trial on the Estate's counterclaims took place from September 11, 2023, through September 13, 2023. The Estate presented evidence at trial of Harris's developmental disability, the discrepancy between the contract price and the appraised value of Harris's home, and the interactions Reilly had with the Sheltered Workshop staff. At the close of evidence, Reilly moved for a directed verdict that the Estate had not presented sufficient evidence for a jury to find that Reilly's actions had caused Harris emotional or dignitary harm. The District Court granted the motion but maintained that "there [were] other damages" in the case "that stem[med] from the signing of the contract with the disabled individual." The District Court determined that it would "be up to the jury to decide whether or not Mr. Reilly took advantage of a disabled individual and, if so . . . , what damages are a result of that." Reilly did not object to that determination nor seek clarification. Nor did Reilly object to the jury instructions or verdict form provided to the jury.

¶6 On the verdict form submitted to the jury without objection, the jury made the following findings:

(1) Reilly "exploit[ed] or [took] advantage of [Harris], a developmentally disabled adult, by entering into a Buy-Sell Agreement."

(2) Reilly "violat[ed] the Consumer Protection Act by entering into a contract with [Harris] for the purchase" of Harris's home.

(3) Harris "suffer[ed] a loss or detriment as a result of" Reilly's actions;

(4) "[B]y clear and convincing evidence," Reilly's conduct rose "to the level of Actual Malice."

4

¶7     The jury awarded the Estate $48,000 in damages but did not specify what portion of the award was attributable to compensatory or punitive damages.  The District Court held a hearing on October 4, 2023, to fix the amount of punitive damages.  The jury ultimately awarded $28,900 in compensatory damages and $45,000 in punitive damages.

¶8     On September 18, 2023, the Estate moved for an award of attorney fees and treble damages pursuant to the CPA.  Reilly responded on September 29, 2023, arguing for the first time that the Estate lacked standing to bring a claim under the CPA because they had not proven at trial that Harris met the definition of a "consumer."  On February 9, 2024, the District Court issued the Damages Order, in which it agreed that the Estate lacked standing to bring a CPA claim and determined that even if the Estate had standing to bring such a claim that the damages awarded by the jury were sufficient to further the purposes of the CPA such that an award of treble damages and attorney fees was unnecessary.

## STANDARD OF REVIEW

¶9     We review a district court's grant of a motion for voluntary dismissal under M. R. Civ. P. 41(a)(2) for an abuse of discretion.  *Petritz v. Albertsons, Inc.*, 187 Mont. 102, 107, 608 P.2d 1089, 1092 (1980).  We review a district court's decision whether to award treble damages and attorney fees under the CPA for an abuse of discretion.  *Plath v. Schonrock*, 2003 MT 21, ¶ 13, 314 Mont. 101, 64 P.3d 984.  The test for an abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice."  *Plath*, ¶ 13 (quoting *C. Haydon Ltd. v. MT Min. Properties, Inc.*, 286 Mont. 138, 146, 951 P.2d 46, 51 (1997)).

**DISCUSSION**

¶10 *Issue 1: Whether the District Court abused its discretion by dismissing Reilly's complaint without imposing sanctions.*

¶11 The Estate argues that the District Court abused its discretion when it dismissed Reilly's complaint without imposing sanctions. We have noted that Rule 41(a)(2) governing voluntary dismissals is "identical in all respects to Rule 41(a)(2) of the Federal Rules of Civil Procedure," meaning that "interpretations under the federal rule have persuasive application." *Petritz*, 187 Mont. at 106, 608 P.2d at 1091. At least two federal circuit courts have held that a "decision of [a] District Court under [Rule 41(a)(2)] must be reversed 'when a relevant factor that should have been given significant weight is not considered.'" *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C. Cir. 1986) (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)).

¶12 In *Kern*, the plaintiff moved to voluntarily dismiss her complaint in the middle of trial, and the district court granted the dismissal without imposing sanctions. *Kern*, 738 F.2d at 970. The Eighth Circuit reversed, holding that, in light of the district court's failure to consider the amount of time and money spent preparing for trial, "it was an abuse of discretion not to compensate the defendant in some fashion both for costs proper and for attorneys' fees." *Kern*, 738 F.2d at 972. We find *Kern* persuasive, particularly given its similarity to our holding in *Petritz* that it is important for a district court to consider "the lateness of [a] plaintiff's motion for dismissal, and the extensive preparation on the part of the defense" when ruling on a motion filed under Rule 41(a)(2) five days before trial. *Petritz*, 187 Mont. at 110, 608 P.2d at 1094.

6

¶13    This case fits comfortably within the analyses of both *Kern* and *Petritz*.  After pursuing a claim for nearly a year-and-a-half, seeking specific performance of a contract with a developmentally disabled individual who was unable to read or understand the value of money and required a payee to handle his financial affairs, Reilly waited until the Friday afternoon before a Monday morning trial to dismiss his claims, well after the Estate had already completed its preparation to defend against his claims.  His motion was, at best, dishonest when it affirmatively asserted that the Estate did not object to the dismissal.  The District Court's grant of the dismissal does not appear to have considered these factors, and the District Court did not rule on the Estate's motion for sanctions filed later that same day.  Given the extremely late hour of Reilly's filing, the extensive preparation the Estate had already undergone, and Reilly's apparent attempt to mislead the District Court that the Estate had not objected to the motion, the District Court abused its discretion by granting the dismissal without awarding sanctions.  Reilly offers no explanation—either in his motion to dismiss in the District Court or on appeal to this Court—for his literally last-minute motion to dismiss.  The record evokes absolutely no explanation as to why Reilly would have pursued a claim for nearly a year-and-a-half, only to abandon it the Friday afternoon before trial, and Reilly offers no explanation either below or on appeal.  The District Court should have granted the Estate its full costs and attorney fees incurred before Reilly's motion to dismiss was filed.

¶14    *Issue 2: Whether the District Court abused its discretion by denying the Estate's request for treble damages.*

¶15    The Estate argues that the District Court abused its discretion by denying its request for treble damages and attorney fees under the CPA. Reilly responds that the District Court correctly determined that the Estate lacked standing to bring a CPA claim because Harris was not a "consumer." The Estate replies that the CPA's "consumer" provision is not jurisdictional, and that Reilly waived that argument by failing to raise it until after trial.

¶16    A private CPA claim for damages requires proof of the following elements:

> (1) that the defendant "use[d] or employ[ed]" an "unfair or deceptive act[] or practice[] in the conduct of any trade or commerce"; (2) in regard to which the claimant was a "consumer" as defined by § 30-14-102(1), MCA; and (3) which caused the claimant to suffer direct or indirect financial detriment or detrimental financial impact.

*Kostelecky v. Peas in a Pod LLC*, 2022 MT 195, ¶ 45, 410 Mont. 239, 518 P.3d 840. Reilly asserts that a plaintiff must prove the second element to have standing to bring a CPA claim, meaning that if a plaintiff fails to do so, a district court lacks jurisdiction over the claim. He does not cite to any precedent to support that assertion. Our case law indicates the opposite: statutory elements of a claim are generally not jurisdictional unless the statute indicates that they are. *See Gateway Hosp. Grp. Inc. v. Phila. Indem. Ins. Co.*, 2020 MT 125, ¶ 23, 400 Mont. 80, 464 P.3d 44 (citing *Seal v. Hart*, ¶ 23, 2002 MT 149, 310 Mont. 307, 50 P.3d 522). "As we have stated on numerous occasions, . . . we are not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position." *McCulley v. Am. Land Title Co.*, 2013 MT 89, ¶ 20, 369 Mont. 433, 300 P.3d 679. Because Reilly totally

fails to cite to any authority in support of his argument that the CPA's "consumer" requirement is a rare jurisdictional element, we decline to hold that it is.

¶17 What is left of Reilly's "consumer" argument is that the jury should not have been instructed on the CPA claim as a matter of law because the Estate had not presented sufficient evidence that Harris was a consumer. We generally do not consider issues raised for the first time on appeal. *Dambrowski v. Champion Int'l Corp.*, 2000 MT 149, ¶ 29, 300 Mont. 76, 3 P.3d 617 (citation omitted). This rule "applies to both substantive and procedural matters, as well as to a change in a party's theory of the case." *Hansen Tr. v. Ward*, 2015 MT 131, ¶ 19, 379 Mont. 161, 349 P.3d 500 (quoting *Day v. Payne*, 280 Mont. 273, 276, 929 P.2d 864, 866 (1996)). The basis for this general rule is that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100 (citation omitted). We will not review a claimed error in a jury instruction absent a specific objection before the trial court. *Nott v. Booke*, 194 Mont. 251, 255, 633 P.2d 678, 680 (1981). Reilly waived the remainder of his "consumer" argument when he failed to object to the jury instructions. We, therefore, decline to consider it.

¶18 Reilly argues that the District Court's denial of treble damages and attorney fees under the CPA was nonetheless correct because such awards are discretionary. "Awarding treble damages [and attorney fees] under [the CPA] is purely a discretionary function of the district court" and "is intended to be compensatory and remedial rather than punitive."

9

*Plath*, ¶¶ 23, 27.  "The purpose of the trebling provision of the [CPA] is to promote or encourage private individuals to pursue violations of [the CPA] by making it more economically feasible to pursue those claims where actual damages are minimal."  *Plath*, ¶ 28.  The District Court determined that the $76,900 in "damages the jury awarded to [the Estate] are not minimal," so awarding treble damages and attorney fees would not "further the compensatory and remedial purposes of the CPA."  The District Court provided a plausible explanation for its discretionary denial of the Estate's request, and we cannot conclude that it abused its discretion in doing so.

¶19    *Issue 3: Whether there was sufficient evidence to support the jury's damage awards.*

¶20    Reilly raises a series of arguments on appeal that amount to the assertion that the jury was improperly instructed on theories the Estate had not presented sufficient evidence to prove.  He argues that the jury instruction laying out the elements of a CPA violation did not accurately state the law, that the jury should not have been instructed on negligence because the Estate did not present sufficient evidence for the jury to find liability on that theory,[1] and that the jury should not have been instructed on punitive damages because the evidence did not support the amount of their award.  As we noted above, we will not review

---

[1] Reilly asserts that the damages the Estate proved at trial "would be more properly [pled in] a malicious prosecution claim."  Whether the Estate has a valid claim for malicious prosecution, the Estate could not have raised that claim until after Reilly dismissed his claim.  *See Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 2002 MT 64, ¶ 16, 309 Mont. 184, 45 P.3d 10 (listing the elements of a malicious prosecution claim, including that "the judicial proceeding terminated favorably for plaintiff").  The fact that the Estate may now bring a second valid claim against Reilly is not proof that it failed to present sufficient evidence for the claims brought in this action.

10

a claimed error in a jury instruction absent a specific objection before the trial court. *Nott*, 194 Mont. at 255, 633 P.2d at 680. Because Reilly did not raise these arguments before the District Court in spite of ample opportunity to do so, we will not consider them on appeal.

¶21 Reilly asserts that he at least preserved his argument that there was insufficient evidence to find that any violation caused harm to Harris before his death because he moved for a directed verdict on damages. While the District Court granted Reilly's motion as to emotional distress and dignitary damages, it likewise determined that there were still damages left in the case that the jury could yet award.[2] Reilly did not object to the District Court's determination nor seek clarification; and as noted above, Reilly did not object to the verdict form that set forth generally the damages that would fairly compensate the Estate, on behalf of Harris, for Reilly's malicious exploitation of a developmentally disabled adult.

## CONCLUSION

¶22 The judgment in favor of the Estate for $28,900 in compensatory damages and $45,000 in punitive damages is affirmed. The District Court's denial of the Estate's request

---

[2] Presumably the District Court was referring to the damages inherent in making a developmentally disabled man—who lacked the capacity to contract in the first place—live for over six months under the cloud of not knowing whether Reilly was going to evict him from his home that Reilly "purchased" for less than a third of its value. It is also possible the District Court was referring to the harm caused by Reilly's repeated aggressive attempts to access Harris at the Sheltered Workshop and at his home despite being turned away by the Sheltered Workshop's employees and supervisors. The District Court did not specify which of the potential harms Reilly's behavior caused Harris, Reilly did not seek clarification, and we decline to speculate on his behalf.

for attorney fees and treble damages pursuant to the CPA is affirmed. The District Court abused its discretion by failing to award attorney fees and costs as a sanction against Reilly pursuant to M. R. Civ. P. 41(a)(2). We affirm in part, reverse in part, and remand this matter to the District Court with instructions to award the Estate its full costs and attorney fees incurred before Reilly's motion to dismiss was filed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON