No. 05-237

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 140

MURPHY HOMES, INC.,
a Montana Corporation,

       Plaintiff, Counter-Defendant
       and Respondent,

   v.

MARILYN MULLER and
PATRICK ABERLE,

       Defendants, Counter-Claimants
       and Appellants.

APPEAL FROM:    The District Court of the Fifth Judicial District,
                  In and For the County of Jefferson, Cause No. DV 2002-10043,
                  Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Palmer A. Hoovestal, Hoovestal Law Firm, PLLC, Helena, Montana

       For Respondent:

       Gary L. Davis, Candace Payne, Luxan & Murfitt, PLLP, Helena, Montana

Submitted on Briefs:  January 31, 2006

Decided:  June 12, 2007

Filed:

_____
                         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Patrick Aberle and Marilyn Muller, who are husband and wife (collectively "Aberle/Muller"), appeal a jury verdict in the District Court for the Fifth Judicial District, Jefferson County, awarding Murphy Homes, Inc. (Murphy Homes), damages, punitive damages, attorney's fees and costs. The case involves a cost-plus contract wherein Murphy Homes agreed to do certain building and remodeling to Aberle/Muller's residence. We affirm.

¶2 Aberle/Muller present eleven issues for review, however, their brief is broken down into six main issues or contentions (as Aberle/Muller refer to them) and more than 23 sub-issues. Such a "shotgun" approach serves no useful purpose and tends to obfuscate legitimate issues by peppering them with irrelevant asides. With difficulty we have disentangled Aberle/Muller's morass of issues and have consolidated them into the following seven issues:

¶3 1. Whether the District Court erred in denying Aberle/Muller's First and Third Motions for Summary Judgment.

¶4 2. Whether the District Court erred in denying Aberle/Muller's Motion for Judgment as a Matter of Law.

¶5 3. Whether the District Court erred in barring Aberle/Muller's "foreseeability" defense.

¶6 4. Whether the District Court erred in denying Aberle/Muller's Motion to Continue and, instead, ordering a bifurcated trial.

¶7    5.  Whether the District Court erred in permitting the jury to view Aberle/Muller's residence and in admitting other evidence of Aberle/Muller's financial condition on the issue of liability.

¶8    6.  Whether the District Court erred in refusing Aberle/Muller's proposed jury instructions.

¶9    7.  Whether the District Court erred in denying Aberle/Muller's post-trial motions.

¶10    In addition, Murphy Homes has asked for an award of attorney's fees on appeal if we affirm the District Court's Judgment.

**Factual and Procedural Background**

¶11    Aberle/Muller hired Murphy Homes to remodel their existing home, construct a new building next to it, and connect the two, forming a U-shaped building to be used as Aberle/Muller's personal residence.  Murphy Homes originally estimated the work at $438,000.00, but as Murphy Homes' President, John Murphy, and Aberle/Muller's architect, Robert Karhu, both testified, there was no actual bidding and no fixed price was established.

¶12    Aberle/Muller and Murphy Homes entered into a cost-plus contract for the proposed construction.  Under the contract, Aberle/Muller were to reimburse Murphy Homes for actual costs plus a contractor's fee of 15% of the costs of material and labor as its compensation for managing the project and overseeing the subcontractors.

¶13    Once the project commenced, Aberle/Muller ordered numerous changes to the architect's original plans.  Murphy Homes alleges that while the original plans called for minor remodeling of the existing structure, in the end, that structure was completely

3

gutted and new electrical and plumbing systems were added, along with a new roof, new windows and new exterior siding.

¶14    Murphy Homes also alleges that when costs on the project reached $638,000.00, it became concerned about the costs it was carrying and about the 15% contractor's fee. Hence, Murphy Homes sent a bill to Aberle/Muller for $11,000.00 representing the 15% fee on the most recent construction draw.  Murphy Homes further alleges that, besides the 15% contractor's fee, Aberle/Muller still owed Murphy Homes $160,000.00 for construction costs already incurred and paid by Murphy Homes.

¶15    Aberle/Muller allege that there were no written change orders or change directives adjusting the contract sum or the contract price which would have entitled Murphy Homes to more fees for changes in the work.  They also allege that they paid Murphy Homes its entire fee and that when Murphy Homes realized that it had miscalculated its fee on the project, Murphy Homes made a claim for additional fees to be applied to the remainder of the project.

¶16    At a meeting on September 4, 2002, Aberle stated that he would not pay Murphy Homes any more money, consequently the relationship ended.  Aberle/Muller contend that when they refused to pay the additional fee, Murphy Homes walked off the job and abandoned the project, leaving them to find other contractors to finish the work.  Murphy Homes contends, on the other hand, that it was, in effect, fired from the project when Aberle/Muller refused to pay the additional fee.

¶17    After the relationship ended, Aberle/Muller paid Murphy Homes the $160,000.00 for construction costs already incurred, but refused to pay the $11,000.00 contractor's

fee. On November 19, 2002, Murphy Homes filed a Complaint seeking to foreclose on a construction lien it had filed against the property. Aberle/Muller counterclaimed alleging defective work, fraud, slander of title and other claims.

¶18 During a protracted and contentious pretrial process, both parties filed numerous Motions to Compel and Motions for Sanctions which we need not go into here. The trial commenced on January 26, 2004, with a six-person jury and two alternates. The trial was originally scheduled for five days, however, as the trial got underway, it became apparent that five days was not sufficient, thus the District Court rearranged its court calendar to provide two more days. Nevertheless, after seven days, Aberle/Muller had only begun to present their defense, hence, the District Court ordered that the trial resume at some unspecified time in the future when the court could find additional time in its busy schedule.

¶19 After some difficulty in setting a date to resume trial (the details of which will be addressed more specifically under Issue 4), trial resumed August 9, 2004, and continued through August 12, 2004. The jury affirmatively responded to the question of whether Aberle/Muller had acted with fraud, deceit and malice towards Murphy Homes and they returned a unanimous verdict awarding Murphy Homes $366,100.00 in damages. Shortly thereafter, a punitive damages hearing took place wherein the jury unanimously awarded another $366,000.00 in punitive damages to Murphy Homes. The total judgment against Aberle/Muller was $896,494.62, which included accrued interest, attorney's fees and costs.

¶20 After trial, Aberle/Muller filed numerous post-trial motions including a Motion to Amend Judgment, a Motion to Limit Punitive Damages, and Defendants' Motion for Attorney's Fees and Costs, all of which were denied by the District Court.

¶21 Aberle/Muller appeal the District Court's Judgment. Additional facts are set forth where necessary to our resolution of the issues.

## Discussion

¶22 Before examining the issues, we note that rather than setting forth the procedural background of this case in their brief as required by M. R. App. P. 23(a)(3), Aberle/Muller included that information in an appendix to their brief. In response, Murphy Homes asks this Court to disregard those eleven pages in Aberle/Muller's appendix and strike them from the record on appeal because they violate this Court's limitations on the length of briefs to be filed in this Court.

¶23 Murphy Homes' argument is well taken. By including in their appendix information that should have been included in their brief itself, Aberle/Muller not only violated M. R. App. P. 27(d), regarding the length of briefs allowed on appeal, but they violated M. R. App. P. 25(b), which sets forth what documents may be contained in an appendix to a brief.

> [A]n appendix shall contain: (1) the relevant docket entries in the proceeding below; (2) any relevant pleading and relevant given or refused jury instruction, finding and opinion; (3) the judgment, order, findings of fact, conclusions of law, or decision in question, together with the memorandum opinion, if any, in support thereof; and (4) such other parts of the record as any party deems it essential for the judges of the court to read in order to decide the issues presented.

6

M. R. App. P. 25(b). A summary of a party's view of the proceedings below is wholly inappropriate for including in an appendix to a brief on appeal. Consequently, we conclude that Aberle/Muller's Appendix 7 consisting of eleven pages and entitled "Detail of the District Court Proceedings" is appropriately stricken from the record on appeal, and we have disregarded it.

¶24 We also note that Aberle/Muller have asked this Court to adopt and incorporate by reference into their brief facts; citations to deposition and trial testimony; authorities; and argument contained in their numerous filings before the District Court. This is also an attempt to circumvent this Court's page limitations on briefing. To do as Aberle/Muller ask would in effect add another 200 pages to Aberle/Muller's brief. M. R. App. P. 23(a)(4) "requires that an appellant present a concise, cohesive argument which 'contain[s] the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on.'" *In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, ¶ 6, 53 P.3d 1266, ¶ 6.

¶25 Aberle/Muller's brief is neither concise nor cohesive, and it has been with great difficulty that this Court has slogged through the quagmire of issues and contentions presented by Aberle/Muller on appeal. Nevertheless, we have managed to drain the swamp sufficiently to reveal at the bottom, seven issues for review by this Court.

**Issue 1.**

¶26 *Whether the District Court erred in denying Aberle/Muller's First and Third Motions for Summary Judgment.*

¶27 In its First Motion for Summary Judgment, Aberle/Muller argued that the facts are "uncontroverted" that the contract price had been paid in full because there were no written change orders or directives as required by the contract which would have entitled Murphy Homes to additional profit or overheard. Similarly, in their Third Motion for Summary Judgment, Aberle/Muller argued that the facts are "uncontroverted" that the contract price has been paid in full because Montana lien law prohibits Murphy Homes' claim as it constitutes a claim for profits and general overhead and not for performance of services or the furnishing of materials.

¶28 In its response to Aberle/Muller's Motions for Summary Judgment, Murphy Homes argued that the facts are not "uncontroverted." Murphy Homes maintained that change orders come from the owner and the architect, not the contractor, and the fact that there were no written change orders is irrelevant as change orders have little or no role in a cost-plus contract. Murphy Homes also argued that Aberle/Muller's so-called "profits and general overhead" were actually negotiated rates between the parties as confirmed by the contract.

¶29 The District Court denied all four of Aberle/Muller's Motions for Summary Judgment during a hearing held to discuss those motions on January 14, 2004. As to Aberle/Muller's First and Third Motions for Summary Judgment, the court determined that there were material factual issues in dispute, thus summary judgment was not appropriate.

¶30 Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Watkins Trust v.*

8

*Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16 (citing M. R. Civ. P. 56(c)). Our standard in reviewing a district court's summary judgment ruling is de novo. *Watkins Trust,* ¶ 16 (citing *Johnson v. Barrett,* 1999 MT 176, ¶ 9, 295 Mont. 254, ¶ 9, 983 P.2d 925, ¶ 9; *Stutzman v. Safeco Ins. Co. of America*, 284 Mont. 372, 376, 945 P.2d 32, 34 (1997)). We use the same M. R. Civ. P. 56 criteria applied by the district court. *Watkins Trust,* ¶ 16 (citing *Johnson,* ¶ 9). Moreover, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Watkins Trust*, ¶ 16 (citing *Johnson,* ¶ 8; *Schmidt v. Washington Contractors Group,* 1998 MT 194, ¶ 7, 290 Mont. 276, ¶ 7, 964 P.2d 34, ¶ 7). If there is any doubt regarding the propriety of the summary judgment motion, it should be denied. *360 Ranch Corp. v. R & D Holding*, 278 Mont. 487, 491, 926 P.2d 260, 262 (1996) (citing *Whitehawk v. Clark*, 238 Mont. 14, 18, 776 P.2d 484, 486-87 (1989)).

¶31 On appeal, Aberle/Muller argue that when the District Court ruled from the bench and denied their Motions for Summary Judgment, the court erred because it did not discuss the law, a specific contract provision, or the testimony, and the court failed to specify what facts appeared without substantial controversy.

¶32 In the Pretrial Order, Aberle/Muller listed 59 issues of disputed facts including: whether Murphy Homes was paid in full under the contract; whether the additional compensation Murphy Homes seeks amounts to nothing more than profit and general overhead and is beyond the expressed permissible scope of Montana lien law; whether the figures Murphy Homes reported and applied for actual labor rates were accurate and/or permissible; whether Murphy Homes is entitled to claim a fee on any project

changes not formalized through change orders or change directives as required by the contract; whether Murphy Homes was paid in full as described by the parties' written contract; and whether Murphy Homes was overpaid under the parties' written contract. Consequently, by their own representation, the facts relevant to Aberle/Muller's First and Third Motions for Summary Judgment were not "uncontroverted," and there were material factual issues in dispute precluding summary judgment.

¶33    Accordingly, we hold that the District Court did not err in denying Aberle/Muller's First and Third Motions for Summary Judgment.

**Issue 2.**

¶34    *Whether the District Court erred in denying Aberle/Muller's Motion for Judgment as a Matter of Law.*

¶35    On August 3, 2004, six days before trial was scheduled to resume in this matter, Aberle/Muller filed their 70-page-long Motion for Judgment as a Matter of Law. In their motion, they claimed that the

> evidence in Plaintiff's case established eight critical facts which entitle Patrick Aberle and Marilyn Muller to judgment as a matter of law:
> a. Patrick Aberle is neither the record owner nor the contacting [sic] owner of the property.
> b. Murphy's claim for equitable adjustment is for additional contractor's fee, which consists solely of profit and general overhead.
> c. Murphy's claim for equitable adjustment is *not* for the payment of unpaid costs of materials or services.
> d. Murphy's claim is *proactive* in nature, and not *retroactive*. Murphy requested additional contractor's fee for the *remainder* of the project.
> e. Murphy has already been paid the entire contract price, including *all* costs of construction as well as its *entire* contractor's fee.
> f. When Patrick Aberle and Marilyn Muller rejected Murphy's request for additional contractor's fee, Murphy walked off the job

10

and abandoned the project without further discussion of costs or renegotiation of the contract.

g. When Murphy abandoned the project, Murphy had been paid all amounts requested in each and every one of its draw requests, including *all* costs of construction and the *entire* contractor's fee.

h. After Murphy abandoned the project, Murphy did not do any further work. [Emphasis in original.]

These eight "critical facts" were then broken down into 23 Motions for Judgment as a Matter of Law and numerous sub-issues.

¶36 On appeal, Aberle/Muller argue that the District Court erred in denying their Motion for Judgment as a Matter of Law as untimely because under M. R. Civ. P. 50(a)(2), such motions may be made at any time before submission of the case to the jury. While Aberle/Muller are correct in that regard, we note that a District Court has the power to provide for the orderly conduct of proceedings before it and to compel obedience to its judgments, orders, and process. Sections 3-1-111(3) and (4), MCA.

¶37 Because of the flurry of motions from both sides during this litigation, the District Court issued an Order on July 28, 2004, that no further motions would be considered except upon leave of court after demonstration of good cause. After Aberle/Muller filed their Motion for Judgment as a Matter of Law, the District Court concluded that the motion was untimely both by reference to the court's scheduling order which required that all pretrial motions were due on or before November 7, 2003, and by the court's July 28, 2004 Order prohibiting the filing of motions unless good cause had been demonstrated.

¶38 Furthermore, the District Court did not deny Aberle/Muller's motion simply on the basis of timeliness. In denying Aberle/Muller's motion, the District Court stated that a

11

variety of the legal issues presented in the motion had been considered before and denied, and other claims for relief demanded by Aberle/Muller involved hotly disputed fact issues which the jury must resolve.

¶39 We review a district court's order granting or denying a motion for judgment as a matter of law as a legal question for which the de novo or plenary standard of review is appropriate. *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, ¶ 18, 152 P.3d 727, ¶ 18. Judgment as a matter of law is properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn therefrom must be considered in the light most favorable to the party opposing the motion. *Johnson*, ¶ 13 (citations omitted). Judgment as a matter of law is not proper if reasonable persons could differ regarding conclusions that could be drawn from the evidence. *Johnson*, ¶ 13 (citing *Kearney v. KXLF Communications, Inc.*, 263 Mont. 407, 417, 869 P.2d 772, 777-78 (1994)). Moreover, as we explained in *Johnson*, courts should exercise the greatest self-restraint in interfering with the constitutionally mandated processes of a jury decision. *Johnson*, ¶ 13 (citing *Ryan v. City of Bozeman*, 279 Mont. 507, 510, 928 P.2d 228, 230 (1996)).

¶40 In reviewing the evidence in a light most favorable to Murphy as we are constrained to do, *Johnson*, ¶ 13, we conclude that reasonable persons could differ as to the conclusions that could be drawn from the evidence. Accordingly, we hold that the District Court did not err in denying Aberle/Muller's Motion for Judgment as a Matter of Law.

**Issue 3.**

¶41    *Whether the District Court erred in barring Aberle/Muller's "foreseeability" defense.*

¶42    After Aberle/Muller consumed several hours of trial time with questions about foreseeability, the District Court determined that that doctrine had no place in the lawsuit and ordered Aberle/Muller's counsel to discontinue asserting it. The court ruled on the basis that foreseeability had not been pled as "foreseeability for purposes of trying to determine the size of a particular construction contract is not the same as foreseeability from the standpoint of causal relationship in a negligence claim."

¶43    On appeal, Aberle/Muller contend that they did plead foreseeability. They maintain that in one of their affirmative defenses they argued that if Murphy Homes suffered damages, such damages were the result of its own negligence. However, the words "foreseeable" and "foreseeability" do not appear in any of Aberle/Muller's pleadings or anywhere in the Pretrial Order. Murphy Homes maintains, and we agree, that the fundamental flaw in Aberle/Muller's argument is the attempt to apply foreseeability as an element of tort law to a construction project governed by contract. Aberle/Muller are mixing inconsistent legal doctrines in their argument.

¶44    This Court has repeatedly held that contentions not included in the pretrial order may not be presented at trial. *Zimmerman v. Robertson*, 259 Mont. 105, 111-12, 854 P.2d 338, 342 (1993). M. R. Civ. P. 16(e) provides that a pretrial order controls the subsequent course of the action unless modified by a subsequent order. The purpose of pretrial orders is to prevent surprise, simplify the issues and permit counsel to prepare

their case for trial on the basis of the pretrial order. *Zimmerman*, 259 Mont. at 111, 854 P.2d at 342 (citing *Workman v. McIntyre Const. Co.*, 190 Mont. 5, 617 P.2d 1281 (1980)). Permitting the introduction of issues first raised during trial would undermine the purposes pretrial orders are intended to serve.

¶45 We conclude in this case that Aberle/Muller did not sufficiently raise the foreseeability issue—even assuming it has any place in this case—prior to trial in either their pleadings or the Pretrial Order. Accordingly, we hold that the District Court did not err in barring Aberle/Muller's "foreseeability" defense.

**Issue 4.**

¶46 *Whether the District Court erred in denying Aberle/Muller's Motion to Continue and, instead, ordering a bifurcated trial.*

¶47 The parties had originally estimated that they would need five days for trial in this matter. However, as discovery progressed and more issues and witnesses were added, the parties requested additional time to try the case. The District Court determined that it did not have available on its calendar the two-week period the parties requested for trial until February 2005, more than a year away. Consequently, the court decided to bifurcate the trial on the basis that it would be unfair to require Murphy Homes to wait an additional year to try their case.

¶48 Aberle/Muller objected, but their Motion to Continue was denied by the District Court. On January 21, 2004, Aberle/Muller filed an Application for Writ of Supervisory Control or Other Appropriate Relief with this Court (Supreme Court Cause No. 04-053) wherein they sought an order requiring the District Court to reset the trial to a time when

14

the case could be tried to final verdict at one time, without bifurcation or interruption. We denied Aberle/Muller's application and the case proceeded to trial on January 26, 2004.

¶49   After five days, Murphy Homes had not completed its case in chief, consequently, the District Court rearranged its court calendar to provide two more days for trial. Nevertheless, when, after seven days, Aberle/Muller had only begun to present their defense, the District Court ordered that the trial resume at an unspecified time in the future.  The court warned that it could be as much as six months before the court found an opening in its busy trial schedule and it ordered the parties to provide the court with a list of dates that they were not available.

¶50   One month after the first portion of the trial in this case concluded, the District Court found it had time in its calendar to resume the trial as another case had settled. Thus, on March 2, 2004, the District Court ordered that trial resume on March 9, 2004. Aberle/Muller objected and on March 5, 2004, they filed an Emergency Petition for Writ of Supervisory Control or Other Appropriate Relief with this Court (Supreme Court Cause No. 04-148) wherein they requested that this Court order the District Court to vacate the trial dates set for March 9, 10, and 12, 2004, and to continue the trial to a date that provides at least thirty days notice to counsel and the parties.

¶51   We granted Aberle/Muller's petition and ordered the District Court to provide counsel with a minimum of thirty days notice of new continuation dates.  In response to this Court's Order, the District Court filed a Memorandum with this Court explaining the problems it had encountered with scheduling a trial date in this case.  The District Court

also noted that it is not always possible to know thirty days in advance if another case will settle and thereby free up some days on the court's calendar allowing the court to resume trial in this case.

¶52 On March 26, 2004, the District Court reset trial to April 27, 2004, but once again, Aberle/Muller objected contending that that date conflicted with a trial in federal court in which counsel was involved. The District Court again vacated trial and imposed sanctions against Aberle/Muller's counsel for failing to keep the court informed of his availability. The court reset trial for August 9, 10 and 11, 2004, noting that if other earlier dates became available with at least thirty days notice, the court would order trial to commence then.

¶53 On July 15, 2004, the District Court applied to this Court for relief from our March 5, 2004 Order requiring the District Court to give thirty days notice to the parties before trial recommenced in this case. The court noted that "[e]fficient administration of the District Court calendar and any hope of concluding the trial of this case requires that discretion be vested in the District Court to schedule all cases for trial, including this one." Hence, the court requested that we amend our Order to require that it provide "reasonable notice" to the parties.

¶54 Recognizing that the District Court had made every attempt to comply with our March 5, 2004 Order and to accommodate Aberle/Muller, but without success, we amended our Order on July 27, 2004, to require that the District Court provide reasonable notice to the parties for all purposes after August 9, 2004.

¶55　Aberle/Muller now argue on appeal that the delay in the resumption of the trial in this case worked to their disadvantage because Murphy Homes' case remained unrebutted for months and cemented Murphy Homes' case in the juror's minds. However, contrary to Aberle/Muller's opinion, it is just as likely that the jurors forgot key aspects of Murphy Homes' case in the interim thereby putting Murphy Homes at a disadvantage. Moreover, part of the fault for the delay in resuming this case lies with Aberle/Muller and their counsel as the facts set forth above demonstrate.

¶56　Nevertheless, this Court already decided the issue of the correctness of a bifurcated trial when we denied Aberle/Muller's Application for Writ of Supervisory Control or Other Appropriate Relief (Supreme Court Cause No. 04-053) in January 2004. Under the law of the case doctrine, a prior decision of this Court resolving an issue between the same parties is binding and may not be relitigated. *Muri v. Frank*, 2003 MT 316, ¶ 11, 318 Mont. 269, ¶ 11, 80 P.3d 77, ¶ 11. This doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *Scott v. Scott*, 283 Mont. 169, 175, 939 P.2d 998, 1001 (1997) (quoting *Fiscus v. Beartooth Elec. Cooperative, Inc.*, 180 Mont. 434, 436, 591 P.2d 196, 197 (1979); s*ee also State v. Van Dyken*, 242 Mont. 415, 791 P.2d 1350 (1990), *cert. denied*, 498 U.S. 920, 111 S. Ct. 297 (1990) (this Court's earlier decision rendered in response to defendant's application for writ of supervisory control addressing the issue of failure to poll the jury before declaring a mistrial, remained binding and could not be relitigated under the law of the case doctrine)).

17

¶57 Accordingly, we hold that the issue of whether the District Court erred in bifurcating the trial in this matter has already been decided by this Court and may not be relitigated.

**Issue 5.**

¶58 *Whether the District Court erred in permitting the jury to view Aberle/Muller's residence and in admitting other evidence of Aberle/Muller's financial condition on the issue of liability.*

¶59 Several months prior to trial, Murphy Homes moved the court to allow the jury to view the residence in question. Murphy Homes explained that because Aberle/Muller were alleging numerous construction defects, such a tour would enhance the ability of the jurors to understand the areas of the house involved and to see the specific features in dispute. At first, Aberle/Muller did not object to the motion for the tour, but they later argued and now argue on appeal, that the sole purpose of the tour was to see their affluence and to prejudice the jury against them.

¶60 The decision to permit or deny a jury view of the property in question is left to the sound discretion of the trial court. *McJunkin v. Kaufman & Broad Home Systems,* 229 Mont. 432, 446, 748 P.2d 910, 919 (1987); *see also McGinley v. Ole's Country Stores, Inc.*, 241 Mont. 248, 250, 786 P.2d 1156, 1157 (1990) ("It is in the discretion of district courts to permit jurors to view the physical location under consideration."). A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice. *Whipps v. Kaufman*, 2007 MT 66, ¶ 6, 336 Mont. 386, ¶ 6, 156 P.3d 11, ¶ 6 (citing *Pumphrey v. Empire Lath and Plaster,* 2006 MT 255, ¶ 9, 334 Mont. 102, ¶ 9, 144 P.3d 813, ¶ 9).

18

¶61 Aberle/Muller offers only speculation that the tour of their home prejudiced the jury against them. Accordingly, we hold that the District Court was acting within its discretion in allowing the jury to view the residence.

¶62 In addition, because both parties sought punitive damages, the District Court ordered that the parties file sworn financial statements disclosing their net worth. In response, Aberle/Muller filed a sworn statement showing a joint net worth of more than $665,000.00. Earlier, as part of discovery prior to trial, Murphy Homes had requested that Aberle/Muller produce any financial statements filed at a financial institution since January 1, 2000. Aberle/Muller responded that they had not filed any such financial statements. However, during the six month recess in the trial, Murphy Homes obtained authorization from the court to subpoena a loan file at Wells Fargo Bank of Helena in which the joint financial statement of Aberle/Muller showed their net worth at $4.6 million, almost $4 million more than indicated on the sworn financial statement they had submitted to the court. Upon receipt of this information, Murphy Homes moved for sanctions for discovery fraud in the form of vacating the trial; entering summary judgment for Murphy Homes; awarding Murphy Homes monetary damages of $134,000.00 plus interest; and dismissing all of Aberle/Muller's counterclaims.

¶63 When trial resumed in this matter, the District Court allowed Murphy Homes to introduce Aberle/Muller's inconsistent financial statements and prevented Aberle/Muller from refuting that evidence. Aberle/Muller asserts on appeal that the District Court erred by admitting evidence of their financial condition on the issue of liability. Aberle/Muller rely on § 27-1-221(7)(a), MCA, which provides in pertinent part: "Evidence regarding a

defendant's financial affairs, financial condition, and net worth is not admissible in a trial to determine whether a defendant is liable for punitive damages."

¶64 The court initially allowed evidence of Aberle/Muller's financial condition to impeach statements made by Aberle/Muller during their direct testimony. "[I]t is axiomatic that a witness may be cross-examined on any subject raised or fact stated on direct examination." *Hando v. PPG Industries, Inc.,* 272 Mont. 146, 150, 900 P.2d 281, 283 (1995) (citing M. R. Evid. 611(b)(1); *Tigh v. College Park Realty Co.*, 149 Mont. 358, 364, 427 P.2d 57, 61 (1967)).

¶65 In this case, Aberle/Muller's counsel had opened the door with questions about the financial impact of the lawsuit on Aberle/Muller. Aberle testified to the fact that Muller had to reduce her work schedule thereby losing a year's salary. On cross examination, Murphy Homes' counsel asked Aberle to quantify Muller's loss of income and Aberle testified that the loss was $300,000.00, a "substantial amount of money." Counsel then referred to the Wells Fargo financial statements indicating that during the time in question, Muller's income had actually increased.

¶66 The District Court allowed additional testimony regarding Aberle/Muller's financial condition as a sanction for Aberle/Muller's failure to comply with the court's order to file accurate financial statements and their failure to provide Murphy Homes with the information it had requested during discovery. Our standard of review of sanctions imposed under M. R. Civ. P. 37, is whether the district court abused its discretion. *Maloney v. Home and Investment Center, Inc.*, 2000 MT 34, ¶ 27, 298 Mont.

213, ¶ 27, 994 P.2d 1124, ¶ 27 (citing *Carl Weissman & Sons v. D & L Thomas Corp.,* 1998 MT 213A, ¶ 53, 290 Mont. 433, ¶ 53, 963 P.2d 1263, ¶ 53).

¶67    "'The purpose of discovery is to promote the ascertainment of truth and the ultimate disposition of the lawsuit in accordance therewith.  Discovery fulfills this purpose by assuring the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation.'"  *Richardson v. State*, 2006 MT 43, ¶ 22, 331 Mont. 231, ¶ 22, 130 P.3d 634, ¶ 22 (quoting *Massaro v. Dunham*, 184 Mont. 400, 405, 603 P.2d 249, 252 (1979) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 392 (1947))).

¶68    "This Court has long taken a dim view of discovery abuses."  *Dambrowski v. Champion Intern. Corp.*, 2000 MT 149, ¶ 34, 300 Mont. 76, ¶ 34, 3 P.3d 617, ¶ 34.  Our position is that dilatory abuse of discovery must no longer be dealt with leniently and that the transgressors of discovery abuses should be punished rather than repeatedly encouraged to cooperate.  *Maloney*, ¶ 34.  Consequently, we regard with favor the imposition of sanctions for failure to comply with discovery.  *Richardson*, ¶ 56 (citing *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 71, 303 Mont. 274, ¶ 71, 16 P.3d 1002, ¶ 71; *McKenzie v. Scheeler*, 285 Mont. 500, 506, 949 P.2d 1168, 1172 (1997)).  "When litigants use willful delay, evasive response, and disregard of court discretion as part and parcel of their trial strategy, they must suffer the consequences."  *Maloney*, ¶ 34 (citing *Owen v. F.A. Buttrey Co.*, 192 Mont. 274, 280, 627 P.2d 1233, 1236 (1981)).  "'It is, after all, a maxim of our rules of discovery that the price for dishonesty must be made

21

unbearable to thwart the inevitable temptation that zealous advocacy inspires.'" *Richardson*, ¶ 56 (quoting *Schuff*, ¶ 71).

¶69     With that in mind, we generally defer to the decision of the trial court regarding sanctions for discovery abuses because the trial judge is in the best position to know "which parties callously disregard the rights of their opponents and other litigants seeking their day in court[] [and] is also in the best position to determine which sanction is the most appropriate."  *Dambrowski*, ¶ 35 (quoting *Smith v. Butte-Silver Bow County*, 276 Mont. 329, 332, 916 P.2d 91, 93 (1996)).

¶70     Nevertheless, we find it incredible that Aberle/Muller now complain that the District Court permitted Murphy Homes to introduce Aberle/Muller's inconsistent financial statements when it was Aberle/Muller who suggested that particular sanction for their discovery abuses.  In "Defendant's Brief Re Discovery Sanctions" filed August 10, 2004, Aberle/Muller stated:

> Aberle/Muller are prepared to accept an appropriate, measured sanction, but suggest that sanction be limited to allowing Murphy Homes to raise Mr. Aberle's inconsistent statements regarding the financial statements—testimony that would otherwise be permissible only in a punitive damages hearing following a verdict—together with a monetary sanction.

Aberle/Muller further stated:

> The facts do not support granting Murphy Homes total victory for a discovery violation.  A more careful response would be to punish Aberle/Muller by allowing Murphy Homes to use Aberle/Muller's discovery error against them.  Murphy Homes could be allowed in their principal case to introduce otherwise impermissible evidence of financial statements to draw the jury's attention to Aberle/Muller's inconsistent statement.  Obviously, Murphy Homes would then be allowed to argue that inconsistency to its advantage.

¶71 Accordingly, we hold that the District Court did not err as Aberle/Muller's inconsistent financial statements came into evidence as proper impeachment on cross-examination and as a sanction for Aberle/Muller's discovery abuses.

**Issue 6.**

¶72 *Whether the District Court erred in refusing Aberle/Muller's proposed jury instructions.*

¶73 Aberle/Muller argue that the District Court erred in refusing to give their proposed jury instructions that relied on cases from the United States Court of Federal Claims. They maintain that these cases were completely authoritative and reliable as well as on point. Murphy Homes argues, on the other hand, that the Court of Federal Claims cases upon which Aberle/Muller relied for its proposed jury instructions principally involved fixed price, bid contracts, and have no relevance to the cost-plus contract in dispute here.

¶74 A district court has discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a district court on the basis of its instructions absent an abuse of discretion. *Williams v. Union Fidelity Life Ins. Co.*, 2005 MT 273, ¶ 46, 329 Mont. 158, ¶ 46, 123 P.3d 213, ¶ 46 (citing *Christofferson v. City of Great Falls,* 2003 MT 189, ¶ 9, 316 Mont. 469, ¶ 9, 74 P.3d 1021, ¶ 9; *Kiely Const., L.L.C. v. City of Red Lodge,* 2002 MT 241, ¶ 62, 312 Mont. 52, ¶ 62, 57 P.3d 836, ¶ 62). In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. *Williams*, ¶ 46. The party assigning error to a district court's

23

instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *Williams*, ¶ 46.

¶75    Aberle/Muller offered more than sixty proposed jury instructions for the District Court's consideration.  The District Court adopted some of Aberle/Muller's proposed instructions and refused some, and Aberle/Muller withdrew several of their proposed instructions because they were duplicative of instructions proposed by Murphy Homes or instructions already adopted by the District Court.

¶76    In refusing Aberle/Muller's proposed instructions based on authority from the Court of Federal Claims, the District Court determined, first, that there was no assurance that Court of Federal Claims law was the law in Montana and, second, that most of these proposed instructions "verge on a jury argument that the jury ultimately will have to decide, having first determined what is the agreement between the parties."

¶77    On appeal, Aberle/Muller failed to show how its proposed instructions were relevant to the fact issues before the jury, how the exclusion of those proposed instructions was prejudicial, or how Court of Federal Claims' decisions are binding on this Court.  Furthermore, after a review of all of the jury instructions given by the District Court in this case, we conclude that the jury instructions did state the applicable law of the case. *Williams*, ¶ 46.

¶78    Accordingly, we hold that the District Court did not err in refusing Aberle/Muller's proposed jury instructions that relied on decisions from the Court of Federal Claims.

**Issue 7.**

24

¶79 *Whether the District Court erred in denying Aberle/Muller's post-trial motions.*

¶80 Aberle/Muller filed numerous post-trial motions, however, they appeal the District Court's denial of only three of those motions: (1) Motion to Amend Judgment; (2) Motion to Limit Punitive Damages Award; and (3) Defendants' Motion for Attorney's Fees and Costs.

*Motion to Amend Judgment*

¶81 Aberle/Muller contend on appeal that the District Court erred as a matter of law when it denied their Motion to Amend Judgment and thus did not rule that the "Prompt Payment Act"[1] does not apply to this case. In their brief on appeal, Aberle/Muller fail to demonstrate why the "Prompt Payment Act" does not apply here, nor do they cite to any authority in support of this contention.

¶82 M. R. App. P. 23(a)(4) provides that "[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." We have repeatedly held that "'we will not consider unsupported issues or arguments' since 'this Court is under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal.'" *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 37 n.8, 329 Mont. 129, ¶ 37 n.8, 122 P.3d 1220, ¶ 37 n.8 (quoting *In re Marriage of McMahon,* 2002 MT 198, ¶ 6, 311 Mont. 175, ¶ 6, 53 P.3d 1266, ¶ 6).

---

[1] The "Prompt Payment Act," as referred to by the parties, is found at Title 28, Chapter 2, Part 21, MCA, and is actually entitled "Payment of Construction Contractors and Subcontractors." Among other things, this act provides for interest of 1½% a month on any unpaid balance under a construction contract. Section 28-2-2104, MCA.

¶83    Counsel's assertion that error was committed is insufficient, consequently, we will not consider Aberle/Muller's argument on this issue.

*Motion to Limit Punitive Damages Award*

¶84    Aberle/Muller contend on appeal that the District Court erred when it did not limit the punitive damages to the statutory limit provided in § 27-1-220(3), MCA, which provides that "[a]n award for punitive damages may not exceed $10 million or 3% of a defendant's net worth, whichever is less."

¶85    The Montana Legislature amended § 27-1-220, MCA, in 2003 to include the 3% limitation on punitive damages. The Compiler's Comments to this statute indicate that this amendment was effective October 1, 2003. All of the relevant events in this case, including the actions of the parties leading up to the meeting of September 4, 2002; the filing of the construction lien; and the subsequent filing of this lawsuit, took place before October 1, 2003. "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." Section 1-2-109, MCA. Consequently, we hold that the statutory limitation in § 27-1-220(3), MCA, does not apply to this case. *See Seltzer v. Morton*, 2007 MT 62, ¶¶ 121-26, 336 Mont. 225, ¶¶ 121-26, 154 P.3d 561, ¶¶ 121-26 (3% cap on punitive damages in § 27-1-220(3), MCA, held not applicable because cause of action accrued before effective date of statute).

*Defendants' Motion for Attorney's Fees and Costs*

¶86    Aberle/Muller contend on appeal that the District Court erred when it did not award costs and attorney's fees to Aberle for Murphy Homes' failure to prevail on its construction lien. Aberle/Muller rely on § 71-3-124, MCA, for their contention.

¶87 Beyond their citation to § 71-3-124, MCA, Aberle/Muller fail to provide any argument in their brief explaining how they believe Aberle prevailed on the issue of the construction lien thereby entitling him to attorney's fees and costs. Once again we note that "this Court is under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." *Leichtfuss,* ¶ 37 n.8. Aberle/Muller's argument on this issue is not only unpersuasive, it is nonexistent.

¶88 Accordingly, we hold that the District Court did not err in denying Aberle/Muller's post trial motions.

## Murphy Homes' Request for Attorney's Fees on Appeal.

¶89 Murphy Homes requests that it be awarded attorney's fees on appeal if we affirm the District Court. This Court may impose sanctions against a party for filing a frivolous appeal pursuant to M. R. App. P. 32, which provides as follows:

> **Damages for appeal without merit.** If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

¶90 As a general rule, we will not impose sanctions pursuant to M. R. App. P. 32, unless the appeal is entirely unfounded and intended to cause delay or unless counsel's actions otherwise constitute an abuse of the judicial system. *Lee v. Lee*, 2000 MT 67, ¶ 66, 299 Mont. 78, ¶ 66, 996 P.2d 389, ¶ 66 (citing *In re Marriage of Moss*, 1999 MT 62, ¶ 41, 293 Mont. 500, ¶ 41, 977 P.2d 322, ¶ 41).

¶91 As we noted throughout this Opinion, Aberle/Muller made numerous errors in filing their brief on appeal. In an attempt to circumvent this Court's page limitations,

Aberle/Muller included information in an appendix to their brief that should have been included in the brief itself and they improperly asked this Court to adopt and incorporate by reference into their brief more than 200 pages of facts; citations to deposition and trial testimony; authorities; and argument contained in their numerous filings before the District Court. In addition, their brief was convoluted and confusing as their list of eleven issues did not correspond in any meaningful way to the more than 29 contentions they set forth in the argument portion of their brief. Further, their brief is dominated by bald declarations of error by the District Court with little or no substantiation.

¶92 As noted previously in this Opinion, M. R. App. P. 23(a)(4) "requires that an appellant present a concise, cohesive argument which 'contain[s] the contentions of the appellant with respect to the issues presented, and the reasons therefore, with citations to the authorities, statutes and pages of the record relied on.'" *McMahon*, ¶ 6. Many of the errors Aberle/Muller made on appeal could have been avoided had they attempted to weed out and substantiate legitimate issues rather than using a "shotgun" approach to attempt to hit every conceivable issue, viable or not, and then failing to support those issues with proper analysis and legal authority.

¶93 We are satisfied from the record and the presentation of the appeal in this matter that Aberle/Muller proceeded here without respect for the integrity of the judicial process, and did so without sufficient reasonable grounds. We therefore conclude that pursuant to M. R. App. P. 32, Murphy Homes' request for attorney's fees and costs in defending this appeal is appropriate.

¶94 The judgment of the District Court is affirmed and this matter is remanded to the District Court for the sole purpose of determining the attorney's fees and costs associated with this appeal and the entry of an award of those fees and costs in Murphy Homes' favor.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS