

DA 11-0464

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 88

GARY OLSEN,

        Plaintiff and Appellee,

  v.

NEIL MILNER and SETH MILNER,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 10-72
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

            Jay Forsyth, Attorney at Law; Libby, Montana

        For Appellee:

            Doug Scotti; Morrison & Frampton, PLLP, Whitefish, Montana

                          Submitted on Briefs: February 29, 2012

                                 Decided: April 23, 2012

Filed:

                       _____

                               Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Appellants Neil and Seth Milner appeal from the District Court for the Nineteenth Judicial District's grant of a mandatory injunction, abatement, and $10,000 damages to Appellee Gary Olsen (Olsen) for his claims of private nuisance and trespass.

¶2     We restate the issues as follows:

¶3     *Issue one: Did the District Court err in determining that Olsen's claims were not barred by res judicata?*

¶4     *Issue two: Did the District Court err in determining that Olsen's claims were not barred by equitable estoppel or waiver?*

¶5     *Issue three: Did the District Court err in determining that Milner was liable to Olsen for trespass?*

¶6     *Issue four: Is Olsen entitled to attorney fees and costs?*

FACTUAL AND PROCEDURAL BACKGROUND

¶7     This appeal arises from a dispute between two neighboring property owners in Libby, Montana, regarding a workshop addition to the home of Seth Milner and his father Neil (Milner). The record demonstrates that Seth did not participate in the litigation, thus we will refer to Neil as "Milner" in the singular.

¶8     In 2007, Milner began construction of a 16 foot by 14 foot workshop addition to his house. Based upon a sketch, the Libby building inspector issued Milner a permit to cover construction of the addition. The sketch did not include property line boundaries

2

even though Milner had commissioned a survey and staked boundary lines in anticipation of the project.

¶9 Libby municipal ordinances require seven-foot setbacks from common boundary lines for permanent structures and three-foot setbacks for outbuildings. The Milner house itself violates the city's seven-foot setback requirement, but was grandfathered in when the ordinance was adopted. The Libby building inspector performed an initial inspection of the addition on June 7, 2007, and informed Milner that the addition violated the city's seven-foot setback requirement. Completion of the structure would require either moving the addition, obtaining a variance from the city, or purchasing property from Olsen in order to satisfy the ordinance. Milner continued construction, at one point telling the building inspector that he had reached an agreement with Olsen to purchase the property necessary to satisfy the setback requirement. However, no such agreement had been reached at that time, and Milner's first contact with Olsen regarding the addition did not occur until the project was nearly completed.

¶10 Olsen has lived with his mother in their house for nearly 40 years, and is developmentally disabled. Olsen's brother, Brian, lives in Kalispell and has power of attorney over Olsen's affairs. When the addition to the Milner property was framed and had drywall installed, Brian became aware of the project and contacted the Libby building inspector regarding setback requirements. The brothers then contacted their neighbors on September 2, 2007, to discuss selling them a strip of land so that the building would be in compliance.

¶11     The parties reached an initial agreement to sell a five-foot-wide strip of Olsen's property on September 3, 2007.  However, Milner learned the next day that the setback requirement was seven feet—not the five feet that the parties initially believed.  The brothers then agreed to sell seven feet for the same price of $5,000.  On December 17, 2007, the parties executed all transaction documents, including a warranty deed and escrow instructions.  Nevertheless, they continued to disagree about what the terms of the agreement required from each of the parties.

¶12     Olsen maintained a shed roughly three feet from the parties' common boundary line.  He asserted that the agreement allowed him to keep his shed where it was until he died or sold the property.  Milner contended the agreement allowed Olsen to continue his use of the property, but required him to move the shed.  The warranty deed for the transaction allowed for Olsen to maintain his fence and "other improvements" within the strip for as long as he owned the property, but Milner argued that the deed did not reflect the parties' agreement as found in the escrow instructions.  In the meantime, snow fell off of Milner's roof, damaging Olsen's fence and destroying his shed.  The brothers replaced the shed with a sturdier structure the following spring, which Milner demanded be removed.

¶13     The disagreement culminated in Milner filing suit in district court, seeking specific performance of the agreement as he presented it, removal of Olsen's property from the strip, and damages for trespass and emotional distress.  Olsen filed a counterclaim alleging conversion, emotional distress, and a claim for attorney fees and costs.  After a bench trial, the court's order, dated July 20, 2009, rescinded and set aside the agreement

4

on the basis of "a lack of consent resulting from a mutual mistake of material fact." Olsen was ordered to return Milner's money and costs, and Milner was required to deed the land back to Olsen. The court also denied Milner's motion to amend the judgment to allow him to keep the strip of land.

¶14 Because snow and rain continued to fall from the roof eaves onto his property, Olsen commissioned a survey that revealed that Milner's addition encroached .81 feet past the boundary line of his property. On March 19, 2010, he filed suit alleging trespass and nuisance. The complaint requested injunctive relief in the form of abatement of the addition's encroachment onto his property. Milner raised the affirmative defenses of res judicata, waiver, and estoppel based upon Olsen's failure to include these claims as compulsory counterclaims in the prior action. He also filed a counterclaim for malicious prosecution. In December 2010, after the second suit proceeded beyond the point of discovery, Milner began cutting back the roof eaves that encroached over Olsen's property.

¶15 A one-day bench trial was held on April 19, 2011. The District Court denied Milner's motion to dismiss, and held that he was not entitled to damages for malicious prosecution. Instead, the court found that Olsen was entitled to $10,000 damages for Milner's trespass and promotion of a nuisance. Moreover, Olsen was entitled to abatement of the nuisance, including removal of a portion of the addition if necessary to comply with setback requirements. Because the addition was not built in good faith, and Milner demonstrated reckless indifference to Olsen's property rights, removal was mandatory despite any hardship. Milner was given 60 days to remove the addition, or

Olsen was entitled to provide notice and begin the work himself, with costs and expenses accruing as further damages. The District Court declined to consider any evidence of Milner's remedial measures because of a motion in limine granted prior to trial. This appeal followed.

## STANDARDS OF REVIEW

¶16 This Court reviews the findings of fact of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence. *Morton v. Lanier*, 2002 MT 214, ¶ 12, 311 Mont. 301, 55 P.3d 380. We review a district court's conclusions of law to determine whether those conclusions are correct. *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, 28 P.3d 467.

¶17 We review for an abuse of discretion a district court's order granting or denying attorney fees if legal authority exists for the fees. *Hughes v. Ahlgren*, 2011 MT 189, ¶ 10, 361 Mont. 319, 258 P.3d 439.

## DISCUSSION

¶18 *Issue one: Did the District Court err in determining that Olsen's claims were not barred by res judicata?*

¶19 Milner argues that Olsen's claims should have been fully litigated in the first action, and were thus barred in the second action according to the doctrine of res judicata. The District Court concluded that the earlier suit simply resulted in a rescission of the sale agreement, and that the issues in that case were not "entirely consonant with the issues here." Olsen concedes that the addition to the home was the critical factual

6

component in the first action, but argues he could not have brought the nuisance and trespass claims because the survey he commissioned, which was the lynchpin of the second action, was not completed until after the first suit's conclusion.

¶20    The doctrine of res judicata, or claim preclusion, bars re-litigation of a claim that a party has already had the opportunity to litigate. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267. Central to res judicata are the concepts that litigation must come to an end at some point, and that judicial economy is promoted by a single action instead of multiple suits. *See Touris v. Flathead County*, 2011 MT 165, ¶ 12, 361 Mont. 172, 258 P.3d 1 (citations omitted).

¶21    Res judicata applies when four elements are satisfied:

1. The parties or their privies are the same;
2. The subject matter of the present and past actions is the same;
3. The issues are the same and relate to the same subject matter; and
4. The capacities of the parties are the same to the subject matter and issues between them.

*Touris*, ¶ 13.

¶22    Olsen concedes the first element, that the parties are the same. However, he challenges the remaining three elements, which we address in turn.

*a.  Subject matter*

¶23    This element of res judicata is concerned with whether the two actions arise from the same underlying basis. *Wiser v. Mont. Bd. of Dentistry*, 2011 MT 56, ¶¶ 12-13, 360 Mont. 1, 251 P.3d 675. Milner contends that the first suit was specifically based upon damages Olsen suffered due to the location of the addition construction. Milner is correct in that the location of the addition provided the necessity to purchase the strip of land,

7

and it also gives rise to the present causes of action. We conclude that the subject matter that gave rise to the first suit is the same subject which forms the basis of the present action.

*b. Identity of the issues*

¶24    The District Court found that Olsen's claims were not barred by res judicata because the first suit resulted in a rescission of the contract to purchase the land, but otherwise the issues between the cases were dissimilar. When determining whether res judicata applies, the key is whether the issues are the same. *Baertsch v. Co. of Lewis & Clark*, 223 Mont. 206, 210, 727 P.2d 504, 506 (1986). Unless it clearly appears that the precise question involved in the second case was raised and determined in the former, the judgment is no bar to the second action. *Phelan v. Lee Blaine Enters.*, 220 Mont. 296, 299, 716 P.2d 601, 603 (1986) (quotation omitted). In the first suit, Milner sought specific performance of the escrow instructions and removal of Olsen's shed. Olsen counterclaimed seeking rescission of the sale agreement and damages for emotional distress and his ruined shed. In the present suit Olsen pursued claims for nuisance, trespass, and injunctive relief seeking abatement of the offending structure. Milner counterclaimed for malicious prosecution. Clearly, the issues raised in the second case were not raised or determined in the first case.

¶25    Milner argues, however, that res judicata will also bar an action for a claim which a party had an opportunity to litigate in a prior action, but did not do so. *See Fisher v. State Farm Gen. Ins. Co.*, 1999 MT 308, ¶ 10, 297 Mont. 201, 991 P.2d 452. While this is correct, Olsen could not have technically presented the issues in the former case as he

8

does now. Olsen's ability to enforce possessory rights to the strip of land did not accrue until the strip of land was deeded back to him pursuant to the court order effecting rescission. *See e.g. Traders State Bank v. Mann*, 258 Mont. 226, 240, 852 P.2d 604, 613 (1993), *overruled on other grounds, Turner v. Mountain Eng'g & Constr.*, 276 Mont. 55, 915 P.2d 799 (1996) (defendants could not have raised contract-related defenses until conclusion of prior bankruptcy proceeding). In other words, Olsen's trespass claim did not exist as a matter of law while Milner held title to the strip. Moreover, Olsen was not aware of the trespass claim at the time of the first suit because he had yet to commission the survey of his property.

¶26 We hold that Milner has failed to demonstrate that the issues are the same and relate to the same subject matter.

*c. Capacities of the parties*

¶27 As we stated above, in reference to the subject matter and the issues in both actions, the respective capacities of Milner and Olsen changed after the rescission of the purchase agreement for the strip of land. Olsen's claims in the present case are necessarily tied to his possessing title to the strip of land. He did not have the capacity to bring these claims until the end of the prior litigation.

¶28 We conclude that the res judicata criteria are not met here, and Olsen's claims are not barred.

¶29 *Issue two: Did the District Court err in determining that Olsen's claims were not barred by equitable estoppel or waiver?*

¶30 Milner argues that Olsen waived his claims when he initially sold the strip of property, only to seek rescission later. He claims that he acted in reliance upon the promised sale of the strip of land, and therefore Olsen waived his right to insist upon compliance with the city's setback provisions. Olsen contends that his attempted sale of the strip of land constituted nothing other than an attempt to help Milner "fix his own mistakes," and that the rescission simply restored Milner to his position prior to the sale; that is to say, already out of compliance with setback requirements.

¶31 Waiver is a voluntary and intentional relinquishment of a known right or claim. It may be proven by express declarations or by a course of conduct which induces the belief that the intent and purpose was waiver. *McKay v. Wilderness Dev., LLC*, 2009 MT 410, ¶ 28, 353 Mont. 471, 221 P.3d 1184. To establish a knowing waiver, the party asserting waiver must demonstrate the other party's knowledge of the existing right, acts inconsistent with that right, and resulting prejudice to the party asserting waiver. *Edwards v. Cascade Co.*, 2009 MT 229, ¶ 30, 351 Mont. 360, 212 P.3d 289 (citations omitted). The claims of trespass and nuisance did not exist as they do now at the time of the first suit. Thus, Olsen could hardly have waived them. Moreover, considering the subject matter of the first litigation, it is impossible to conclude that Olsen knowingly, voluntarily, and intentionally relinquished his right to object to the problems stemming from Milner's addition construction. His express objections were the reason the two parties could not reach a mutual agreement on the terms of the land sale.

¶32 In order to establish his claim of estoppel, Milner is required to prove each of six elements of that defense to Olsen's claims: (1) the existence of conduct, acts, language,

or silence amounting to a representation or a concealment of a material fact; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least the expectation, that it will be acted upon by the other party, or under circumstances both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party and, thus relying, he must be led to act upon it; and (6) he must in fact act upon it in such a manner as to change his position for the worse. *Edwards*, ¶ 31.

¶33 Olsen neither represented, nor concealed any material fact as related to the first element. The location of the common boundary lines only became known to Olsen subsequent to the first lawsuit. To the contrary, the trial courts in both actions found that Milner knew the boundary lines of his property before he began construction, and was informed of the setback provisions in its early stages. Concerning elements four through six, the record demonstrates that Olsen's offer to sell the strip of land in no way influenced Milner's intention to complete the addition construction. As found by the District Court, Milner's first discussion with Olsen and his brother did not take place until "the addition was well on the way to completion."

¶34 We conclude that the District Court did not err in finding that Olsen neither waived, nor was equitably estopped from pursuing his claims.

11

¶35    *Issue three: Did the District Court err in determining that Milner was liable to Olsen for trespass?*

¶36    Milner argues that he was unaware at the time of construction that the roof eaves of his addition encroached onto Olsen's property, and therefore he could not have had the requisite intent for the tort of intentional trespass. However, the District Court did not find that Milner had intentionally trespassed on Olsen's land. Instead, the court found that the "encroachment is the result of Milner's grossly negligent and willful ignorance of the location of the parties' property line."

¶37    In addition to the tort of intentional trespass, we also recognize the tort of reckless or negligent trespass. *Sunburst Sch. Dist. No. 2 v. Texaco*, *Inc.*, 2007 MT 183, ¶ 51, 338 Mont. 259, 165 P.3d 1079. The Restatement (Second) of Torts, § 165, states in part:

> One who recklessly or negligently . . . enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest.

Restatement (Second) of Torts § 165 (1965); *see also Guenther v. Finley*, 236 Mont. 422, 425, 769 P.2d 717, 719 (1989).

¶38    In this case, the District Court specifically concluded that Milner acted "without good faith and with either the intent to cause harm to Olsen's property, or the reckless disregard of Olsen's property rights." In doing so, Milner "injuriously affected Olsen's property, and lessened Olsen's personal enjoyment of his property." Further, the District Court found that Milner was aware of the property line boundaries before he began

12

construction and was again warned of encroachment problems early in the process, yet still built the addition in a manner that effected trespass and nuisance. We find that the District Court's findings were supported by substantial credible evidence, and the court did not err in determining that Milner was liable to Olsen for trespass.

¶39 *Issue four: Is Olsen entitled to attorney fees and costs?*

¶40 Olsen argues that Milner's appeal was taken without substantial or reasonable grounds, and thus he is entitled to the sanction award of attorney fees and costs pursuant to M. R. App. P. 19(5). Olsen also bases his request upon what he argues are Milner's mischaracterizations of the factual record and the District Court's findings. Milner cites to *Murphy Homes, Inc. v. Muller*, 2007 MT 140, ¶ 90, 337 Mont. 411, 162 P.3d 106, for the proposition that we generally do not impose sanctions pursuant to M. R. App. P. 19(5) "unless the appeal is entirely unfounded and intended to cause delay or unless counsel's actions otherwise constitute an abuse of the judicial system." In this case, we hold the appeal was based on substantial and reasonable grounds and not intended to cause delay. However, M. R. App. P. 19(3)(a) allows costs on appeal to be awarded to the prevailing party unless otherwise specifically provided in the decision by this Court. "Taxable costs include costs of reproducing briefs and necessary appendices, costs incurred in transmission of the record, cost of the reporter's transcript if necessary for the determination of the appeal, and the fee for filing the notice of appeal." M. R. App. P. 19(3)(a). Accordingly, we decline to award Olsen attorney fees, but as the prevailing party, he is entitled to the costs of his appeal pursuant to Rule 19(3)(a) of the Montana

Rules of Appellate Procedure. This is a factual matter that must be resolved by the District Court on remand.

CONCLUSION

¶41 For the foregoing reasons, we affirm the judgment of the District Court and remand for further proceedings in accordance with this opinion.


/S/ MIKE McGRATH


We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS



Justice Jim Rice, dissenting.

¶42 On first glance, the Court's analysis of the distinction between the two actions to avoid the application of res judicata seems viable. Yet, a closer inspection of how these two cases were actually pled and tried convinces me that res judicata should apply.

¶43 The Court concludes that Olsen "could not have technically presented the issues in the former case as he does now." Opinion, ¶ 25. A comparison of Olsen's pleadings in the two actions indicates he essentially did so. The following are quotes:

1. Olsen's Answer/Counterclaim in Case #1:
Milners had a boundary line adjustment survey conducted . . . . Milners, knowing the property line, built an addition onto [their lot] that abuts the

14

property line. This violates the City of Libby's Ordinance 17.12.060 that states "[t]he minimum width of any side yard shall be seven feet . . . ."

Olsen's Complaint in Case #2:
Defendants [Milners] surveyed and staked the boundary line between the properties for the purpose of constructing an addition onto their home. . . . Defendants built the addition in violation of the city setback requirement . . . .

2. Olsen's Answer/Counterclaim in Case #1:
[T]he addition's roof slopes towards Olsen's property. . . . [T]he snow falling from Milnors' [sic] roof during the winter of 2007/2008 caused Olsen's shed to collapse. . . . Milnors [sic] also had the roof pitch so the snow would fall onto Olsen's property. In other words, the eaves ran parallel to Olsen's property. . . . [T]he snow fell off the Milnors' [sic] roof and onto Olsen's property.

Olsen's Complaint in Case #2:
Defendants built the addition . . . in such a manner that the eves from the addition are on or cross the property boundary. Snow from the eves sheds onto Olsen's property. . . . During the winter of 2007-2008, snow slid off of Defendants' new addition and caved in Olsen's shed.

3. Relief requested by Olsen in Answer/Counterclaim in Case #1:
That the Court rescind the Contract and return the parties to their original positions . . . That the Court require Milnors [sic] to build a snow break on their roof that will prevent the snow from falling onto Olsen's property . . . That the Court award Defendant [Olsen] its damages [for conversion] . . . .

Relief requested by Olsen in Complaint in Case #2:
By permitting snow shedding from their new addition and by placing the addition so close to the property line, Defendants allowed a nuisance to exist . . . . Plaintiff is entitled to an abatement of the nuisance as well as damages . . . . Plaintiff is entitled to an order [for trespass] enjoining Defendants from maintaining their addition in a location too close to or across the property boundary line.

¶44 Olsen sought damages under a conversion theory in Case #1 and under nuisance and trespass theories in Case #2. He sought injunctive relief requiring Milners to modify their property in both cases. The Court, in distinguishing the actions, notes that Olsen's

15

survey was completed after the first suit, and reasons that Olsen "was not aware of the trespass claim" at the time of the first suit. Opinion, ¶ 25. However, Olsen's claims in the second case were not explicitly premised upon the survey, but rather upon Milners maintaining their addition "too close to or across" the property line "in violation of the city setback requirement," similar to his claims in the first case. More importantly, if Olsen was not aware of the potential trespass during the first case, he should have been. The boundary line was not only put into play by Olsen in the first case, but he based his request for relief on it. The burden of knowing where the line was located should be imputed to him.

¶45 The Court further reasons that Olsen did not have "possessory rights" in the disputed strip of land until it was deeded back to him after the first case. Opinion, ¶ 25. However, Olsen claimed such rights during the first case, seeking damages from Milners for allowing snow to fall "onto Olsen's property," and seeking injunctive relief requiring Milners to alter their building to broadly "prevent the snow from falling onto Olsen's property"—not merely to avoid damaging his shed. Olsen sought not only to reclaim the property by a rescission of the contract, but he also sought relief based upon the assumption that he held possessory rights to it and that he would own it outright if rescission was ordered. Although he sought recovery under different theories in each case, Olsen's claims were fundamentally identical in both—the issues were the same. To the extent there was some variation in the claims, Olsen had the opportunity to litigate all his claims in the first action.

16

¶46     Olsen was denied damages and denied injunctive relief in the first case.  He did not appeal.  In the second case he repackaged similar claims under new theories and obtained both damages and the injunctive relief he was denied in the first case.  I would apply res judicata and reverse.


                                    /S/ JIM RICE